SHERRY S. BRAGG (SBN 132815)
sbragg@weintraub.com
JACOB C. GONZALES (SBN 235555)
jgonzales@weintraub.com
CORBETT H. WILLIAMS (SBN 246458)
cwilliams@weintraub.com
ANTHONY B. DAYE(SBN 252217)
adaye@weintraub.com
**weintraub | tobin**
23 Corporate Plaza Drive, #200
Newport Beach, California 92660-7901
Tel: (949) 760-0204; Fax: (949) 760-2507

Attorneys for Defendants FRENCH CONCEPTS INC. dba L'AMANDE FRENCH BAKERY, FRENCH CONCEPTS BH dba L'AMANDE FRENCH BAKERY, BARATOW LLC, ANALIZA MOITINHO DE ALMEIDA, GONCALO MOITINHO DE ALMEIDA

weintraub tobin chediak coleman grodin
law corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERMITA ALABADO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FRENCH CONCEPTS INC., et al.,<br><br>Defendants. | Case No. 2:15-cv-02830<br><br>(Los Angeles Superior Court Case No. BC576048)<br><br>DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA<br><br>[28 U.S.C. § 1331 (Federal Question)] |

weintraub tobin chediak coleman grodin
law corporation

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446(a), Defendants French Concepts Inc. dba L'Amande French Bakery, French Concepts BH dba L'Amande French Bakery, Baratow LLC, Analiza Moitinho De Almeida and Goncalo Moitinho De Almeida (collectively "Defendants") hereby remove the above-captioned action to this Court from the Superior Court of the State of California, County of Los Angeles, in which it is currently pending as Case No. BC576048 (the "State Court Action"). Removal of the State Court Action is proper for the following reasons:

## I. FEDERAL QUESTION JURISDICTION

1. A case may be removed to a federal court if it could have been brought in that federal court originally. 28 U.S.C. § 1441(a). Federal courts have original federal question jurisdiction over all civil claims "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331.

2. This Court has original subject matter jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States. For example, in their complaint filed in the State Court Action on March 18, 2015 ("Complaint"), Plaintiffs assert multiple claims under:

- The Forced Labor Laws, 18 U.S.C. §§ 1589-1590. (*See* 1st cause of action of Complaint.)
- The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. (*See* 3rd cause of action in Complaint.)
- Equal rights laws under 42 U.S.C. § 1981. (*See* 8th, 9th and 10th causes of action in Complaint.) A claim under 42 U.S.C. § 1981 invokes federal jurisdiction. *Harris v. McDonald's Corp.*, 901 F. Supp. 1552, 1559 (M.D.Fla.1995) ("Plaintiff has stated a claim

under 42 U.S.C. § 1981, and in so doing has satisfied the requirements of 28 U.S.C. § 1331 and 28 U.S.C. § 1343, thereby properly invoking the jurisdiction of this Court.")

- The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207. (*See* 13th and 14th causes of action of Complaint.) Claims arising under the FLSA fall squarely within the court's jurisdiction as a federal question. *See Roberson v. Danny Ontiveros Trucking,* No. 08-0552, 2008 WL 4809960 at *4 (E.D. Cal. Nov. 3, 2008) ("Without question, the FLSA is a federal law" giving rise to federal court jurisdiction.).

Given the Court's original jurisdiction over the above-claims, the State Court Action is properly removable to federal court under 28 U.S.C. § 1441(a).

## II. VENUE

3. Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. section 1441(a) because this District Court embraces the place in which the removed action has been pending, which is the Los Angeles County Superior Court.

## III. PLEADINGS

4. On March 18, 2015, Plaintiffs Ermita Alabado, Fernando Belidhon, Romar Cunanan, Armelinda Dela Cerna, Elmer Genito, Wilfredo Lariga Jr., Louise Louis, Gina Pablo-Grossman, Recky Puzon, Ronaldo Sanita, and Rolando Suratos (collectively, "Plaintiffs") commenced the State Court Action against Defendants by filing the Complaint in the State Court Action. (Declaration of Jacob C. Gonzales in Support of Removal ("Gonzales Dec."), ¶ 2.) Defendants received the Complaint on or about March 18, 2015. (*Id.*, ¶ 3.) A true and correct copy of the Complaint is attached hereto as **Exhibit A** as provided in 28 U.S.C. § 1446(a).

5. Plaintiffs' Complaint purports to allege twenty-seven causes of action

weintraub tobin chediak coleman grodin law corporation

against the Defendants, including: violation of Force Labor Laws, 18 U.S.C. §§ 1589–1590 (1st cause of action); RICO violations (3rd cause of action); violation of 42 U.S.C. § 1981 (8th, 9th and 10th causes of action); and, FLSA violations (13th and 14th causes of action). Specifically, Plaintiffs allege:

- ¶ 110[1]: "Defendants violated 18 U.S.C. § 1590…Defendants conspired with each other to violate 18 U.S.C. §§ 1589 and 1590…."
- ¶ 133: Defendants violated "18 U.S.C. § 1546, and thus engaging in racketeering activity."
- ¶ 135: Defendants violated "18 U.S.C. § 1351, and thus engaging in racketeering activity."
- ¶ 165: Defendants "have violated § 1981 [sic]."
- ¶ 169: "Defendants violated § 1981 [sic]…."
- ¶ 199: Defendants paid Plaintiffs less than "federal minimum wage" in violation of FLSA.
- ¶ 205: Defendants did not pay Plaintiffs "overtime wages" in violation of FLSA.

Plaintiffs expressly allege claims under federal laws, and, thus, this matter is subject to removal on the basis of assertion of a federal question.

6. On April 15, 2015, Defendants filed and served their answer in the State Court Action. A true and correct copy of Defendants' answer is attached hereto as **Exhibit B**.

7. The Complaint and Defendants' answer, which are attached hereto as **Exhibits A** and **B** respectively, constitute all pleadings, process and orders served on or by the Defendants in the State Court Action.

////

////

---

[1] Unless stated otherwise, reference to "¶" is to paragraphs in the Complaint.

weintraub tobin chediak coleman grodin law corporation

### IV. OTHER PROCEDURAL REQUIREMENTS

8. This Notice of Removal is filed by all Defendants named in this matter.

9. Defendants filed this Notice of Removal within thirty (30) days of receipt of the Complaint. (Gonzales Dec., ¶ 3.) Accordingly, removal is timely pursuant to 28 U.S.C. § 1446(b)(1).

10. Contemporaneous with the filing of this pleading with the Clerk of the United States District Court for the Central District of California, Defendants will serve written notice of the filing on Plaintiffs' counsel of record: 1) Michael Romey, Yi-Chin Ho, Phillip Wang, Grant Cohen, Sid Nadkarni, and Alexandra Welch of Latham & Watkins LLP, 355 South Grand Ave., Los Angeles, CA 90071-1560; and, 2) Laboni Hoq, Nicole Gon Ochi, Yanin Senachai and John C. Trang of Asian Americans Advancing Justice, 1145 Wilshire Blvd., 2nd Floor, Los Angeles, CA 90017.

11. Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly file a Notice to State Court of Removal of Civil Action to Federal Court with the Clerk of the Los Angeles County Superior Court.

12. By this Notice of Removal, Defendants do not waive any defenses they may have nor waive any defenses they may assert pursuant to Rule 12 of the Federal Rules of Civil Procedure, and hereby expressly reserve the right to assert any such defenses in this action.

weintraub tobin chediak coleman grodin
law corporation

DATED: April 16, 2015

**weintraub | tobin**

By /s/ Jacob Gonzales
Jacob Gonzales
Attorneys for Defendants
French Concepts Inc. dba L'Amande French Bakery, French Concepts BH dba L'Amande French Bakery, Baratow LLC, Analiza Moitinho De Almeida and Goncalo Moitinho De Almeida

weintraub tobin chediak coleman grodin
law corporation

# Exhibit "A"

LATHAM & WATKINS LLP
MICHAEL ROMEY (Bar No. 137993)
*michael.romey@lw.com*
YI-CHIN HO (Bar No. 204834)
*yichin.ho@lw.com*
PHILIP WANG (Bar No. 262239)
*philip.wang@lw.com*
GRANT COHEN (Bar No. 294467)
*grant.cohen@lw.com*
SID NADKARNI (Bar No. 301125)
*sid.nadkarni@lw.com*
ALEXANDRA WELCH (Bar No. 302394)
*alexandra.welch@lw.com*
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Attorneys for Plaintiffs

(Add'l Counsel on next page)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 18 2015

Sherri R. Carter, Executive Officer/Clerk
By Myrna Beltran, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

CENTRAL DISTRICT JUDICIAL DISTRICT

ERMITA ALABADO, an individual, FERNANDO BELIDHON, an individual, ROMAR CUNANAN, an individual, ARMELINDA DELA CERNA, an individual, ELMER GENITO, an individual, WILFREDO LARIGA JR., an individual, LOUISE LUIS, an individual, GINA PABLO-GROSSMAN, an individual, RECKY PUZON, an individual, RONALDO SANTIA, an individual, and ROLANDO SURATOS, an individual,

Plaintiffs,

vs.

FRENCH CONCEPTS, INC., a California corporation, d/b/a L'AMANDE FRENCH BAKERY, FRENCH CONCEPTS BH, a California corporation, d/b/a L'AMANDE FRENCH BAKERY, BARATOW LLC, ANALIZA MOITINHO DE ALMEIDA, an individual, and GONCALO MOITINHO DE ALMEIDA, an individual,

CASE NO. BC576048

Assigned To:

**COMPLAINT FOR:**

(1) Human Trafficking (18 U.S.C. §§ 1589–1590);
(2) Human Trafficking (Cal. Civil Code § 52.5);
(3) Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1964);
(4) Discrimination under the Fair Employment and Housing Act ("FEHA") (Cal. Govt. Code § 12940);
(5) Unlawful Language Restrictions under FEHA (Cal. Govt. Code § 12951(a));
(6) Harassment under FEHA (Cal. Govt. Code § 12940(j));
(7) Retaliation for Activities protected under FEHA, (Cal. Govt. Code § 12940);
(8) Racial, Ancestry, and Ethnicity Discrimination (42 U.S.C. § 1981);
(9) Racial, Ancestry, and Ethnicity Harassment (42 U.S.C. § 1981);

Defendants.

(10) Retaliation for Activities protected under § 1981 (42 U.S.C. § 1981);
(11) State Minimum Wage (Cal. Labor Code §§ 1194, 1194.2 and 1197);
(12) State Overtime (Cal. Labor Code §§ 510(a), 1194 and 1198 and IWC Wage Order No. 15);
(13) Federal Minimum Wage (U.S.C. § 206(a), (f));
(14) Federal Overtime (29 U.S.C. § 207(a);
(15) Meal and Rest Periods (Cal. Lab Code § 226.7);
(16) Wage Statement Violations (Cal. Labor Code § 226);
(17) Labor Code Whistleblower Provision (Cal. Labor Code § 1102.5);
(18) California Labor Code Retaliation (Cal. Labor Code § 98.6);
(19) Wrongful Discharge in Violation of Public Policy
(20) Unfair Immigration-Related Practices (Cal. Labor Code § 1019);
(21) Solicitation through Misrepresentation (Cal. Labor Code §§ 970, 972)
(22) Waiting Time Penalties Cal. Labor Code § 203)
(23) Intentional Infliction of Emotional Distress;
(24) Negligence;
(25) Negligence Per Se;
(26) Fraud and Negligent Misrepresentation; and
(27) California Unfair Competition Law (Cal. Bus. & Prof. Code § 17203).

Action Filed:

(Add'l counsel)

ASIAN AMERICANS ADVANCING JUSTICE—LOS ANGELES
LABONI HOQ (Bar No. 224140)
*lhoq@advancingjustice-la.org*
NICOLE GON OCHI (Bar No. 268678)
*nochi@advancingjustice-la.org*
YANIN SENACHAI (Bar No. 288336)
*ysenachai@advancingjustice-la.org*
JOHN C. TRANG (Bar No. 277080)
*jtrang@advancingjustice-la.org*
1145 Wilshire Blvd., 2nd Floor
Los Angeles, California 90017
Telephone: (213) 977-7500
Facsimile: (213) 977-7595

Plaintiffs Ermita Alabado, Fernando Belidhon, Romar Cunanan, Armelinda dela Cerna, Elmer Genito, Wilfredo Lariga Jr., Louise Luis, Gina Pablo-Grossman, Recky Puzon, Ronaldo Santia, and Rolando Suratos ("Workers" or "Plaintiffs") allege against their current or former employer defendants French Concepts, Inc. a California corporation; French Concepts BH, a California corporation; Baratow, LLC, a California limited liability company; Analiza Moitinho de Almeida; and Goncalo Moitinho de Almeida ("Defendants") as follows:

## I. INTRODUCTION

1. The Workers bring this action against Defendants for labor trafficking, racketeering violations, labor law violations, unfair competition, employment discrimination and retaliation, unfair immigration-related practices, and related common law claims. The 11 Workers are people of modest means who worked in the service industry in the Philippines. They are victims of Defendants' scheme to abuse the immigration laws of the United States and to fraudulently induce the Workers to leave their homes and families in the Philippines and move to Los Angeles. The Workers were told they would work as skilled bakery chefs and managers, but when they arrived what they faced was starkly different. They were forced to work for Defendants in illegal, oppressive, and discriminatory conditions as domestic servants, physical laborers engaged in landscaping and building maintenance, and retail bakery workers doing a substantial amount of menial work at Defendant's French bakeries. Defendants told the Workers that they must continue to work under the exploitative conditions or they would each owe Defendants over $11,000—sums the Workers could never afford to pay. When the scheme began to unravel and the state labor enforcement agency began an investigation, Defendants resorted to obstruction, threats, intimidation, and destruction of evidence to try to hide their wrongdoing. Defendants threatened to harm the workers and their families back in the Philippines where Defendants bragged about their political clout. Defendants instructed the workers to lie to the investigators and other government officials and, when the Workers refused, they retaliated against them, including wrongfully firing five of them, leaving the Workers with no livelihood and too afraid to return home to the Philippines because of Defendants' threats.

2. Analiza Moitinho de Almeida ("Ana") is from a wealthy, powerful, and

politically connected family in the Philippines. Ana and her husband, Goncalo owned a successful chain of French bakeries in the Philippines, Le Coeur de France, where ten of the Workers worked before being recruited to work for the Almeidas and their business in the U.S. After selling the Le Coeur de France chain in 2008, the Almeidas began plans to relocate to Southern California to open a new chain of French bakeries. They formed a new company, French Concepts, Inc., dba L'Amande French Bakery, and began hiring the Workers in the Philippines. Defendants secured E-2 visas Workers and then flew them in batches of two or three from the Philippines to Southern California to begin work.

3. The E-2 visa allows foreign nationals who invest substantial capital in a U.S. business to bring foreign workers to the U.S. for up to five years if they have specialized skills that are essential to the business or if they will be serving in an executive or supervisory position with the business. In securing E-2 visas for the Workers, Defendants misrepresented to the U.S. government the work the Workers would be expected to do—work that in reality included a significant amount of unskilled, menial labor—and overstated the salary they would be paid.

4. Before the bakery opened, Defendants forced the Workers that had already arrived to perform months of day-long manual labor at their personal residence in Rolling Hills Estates and their 17-unit rental property in Long Beach, including painting, cleaning, and landscaping. For these tasks, Defendants paid the Workers barely more than two dollars per hour. During this time, the Workers slept for several months on the floor of a small laundry room in the Almeidas' house.

5. When the bakery opened its first location, Defendants initially required the Workers who had already arrived in the U.S. to work at least 13 hours a day every day of the week. Defendants did not allow them to miss time when they were sick, not even making an exception for a Worker who needed urgent and extensive medical treatment. Defendants paid these Workers as little as $1,000 per month, or less than three dollars per hour. To conceal evidence of these wage and hour violations, Defendants altered or destroyed the Workers' timecards and told them not to accurately report their actual time worked. Defendants also demeaned and verbally abused the Workers, prevented them from speaking in their native

Tagalog language, and tried to isolate them from other Filipinos as well as local workers at the bakery.

6. Ana also told the Workers that they owed her for the money she spent on their visa and travel expenses even though she never previously told them they would have to repay her for these expenses. She claimed that each Worker owed her at least $11,000, an exorbitant and unexpected amount that was many times more than the actual expenses incurred.

7. When the Workers complained about the long hours, illegally low pay, and intolerable conditions, Ana threatened to collect on the Workers' $11,000 "debt," an amount that the Workers had no means to repay. Soon after, she gave the Workers who had already arrived a document stating that she would forgive these expenses if they worked at least three years for the company, leading the Workers to believe that their only way of avoiding financial ruin was to comply with the Almeidas' demands that they work three more years.

8. More than a year and a half after the bakery's opening, the California Labor Commissioner's Office, also known as the Division of Labor Standards Enforcement ("DLSE"), began an investigation into state labor law violations at the bakery. After finding out about the investigation, Defendants threatened and harassed the Workers to attempt to induce them to help Defendants conceal the wage and hour violations. For example, Ana demanded that the Workers falsify responses on a DLSE questionnaire they filled out under her supervision. She warned some Workers that if they did not comply, they would lose their jobs, forcing them to return to the Philippines. She also threatened to some of the Workers that she or her powerful, well-connected parents would ruin the lives of the Workers and their families back in the Philippines.

9. After the Workers told the truth about the abuses they suffered at the DLSE hearing, Defendants retaliated by issuing write-ups against several of the Workers and terminating five of them for pre-textual reasons. The terminated Workers face imminent financial harm and are afraid to return to the Philippines. The Workers who remain at L'Amande French Bakery fear that they will be the next ones terminated for exposing the abuses they suffered.

## II. JURISDICTION AND VENUE

10. The Court has jurisdiction over this action under California Code of Civil Procedure § 410.10 because each Defendant is domiciled or incorporated in California.

11. Venue in this Court is proper under California Code of Civil Procedure § 395(a) because at least one Defendant resides in this county.

## III. PARTIES

### A. Plaintiffs

12. The Plaintiffs are 11 Filipino workers whom Defendants brought to the U.S. and who worked for L'Amande French Bakery. All of them worked at L'Amande French Bakery's Torrance location. Five of the Workers also worked at L'Amande French Bakery's Beverly Hills location, where they did similar work. One of the Workers also worked for the Almeidas in their household as a full-time domestic servant.

13. Defendants brought the Workers to the U.S. in six groups.

a. The Almeidas brought Gina Pablo-Grossman ("Gina") to the U.S. on September 24, 2009, and she worked for the Almeidas until August 30, 2012. Gina had worked for the Almeidas in the Philippines as a nanny for their son, Lorenzo, starting in 2000. Gina's salary in the Philippines was the equivalent of $120 USD a month. The Almeidas told Gina in 2009 that if she moved with them to the U.S., she would continue working as Lorenzo's nanny. But, upon her arrival, the Almeidas forced her to work as a domestic servant in their home and to clean, paint, and landscape their 17-unit apartment complex ("Apartment Complex"). While continuing these duties full-time, Gina also worked as a kitchen cook at L'Amande French Bakery in Torrance from April 1 until July 2012.

b. Defendants brought Ermita Alabado ("Ermita"), Fernando Belidhon ("Fernando"), and Louise Luis ("Louise") to the U.S. on September 16, 2011.

(1) Ermita grew up in a poor family, as her father was a sugar cane farmer and her mother stayed home to take care of Ermita and her six

siblings. Ermita dropped out of high school at age 16 and began working as a domestic servant for Ana's parents when she was 20. Beginning in 1994, she worked for Ana as a kitchen supervisor at Le Coeur de France in Manila. Ermita never earned more than the equivalent of $360 USD a month. She continued working with the bakery after the Almeidas sold the company in 2008. She accepted the job with Defendants to work at L'Amande French Bakery so that she could support her husband and three daughters, who remain in the Philippines. Ermita worked for L'Amande French Bakery beginning on September 16, 2011. She worked as a kitchen supervisor at L'Amande French Bakery Torrance from April 1, 2012, when the bakery opened for business, until July 9, 2014, when she transferred to the Beverly Hills location. She then worked at the Beverly Hills location until January 22, 2015, when L'Amande French Bakery terminated her.

(2) Fernando grew up equally poor, with a father who worked as a farmer and a mother who cared for Fernan and his four siblings. He could not afford to attend college and began working in construction after he graduated in high school. In 1997, Ermita referred him to Ana, who hired him at Le Coeur de France. He worked his way up to an assistant production supervisor, overseeing bread and pastry preparation. Fernando never earned more than the equivalent of $471 USD a month. He continued working with the bakery after the Almeidas sold the company in 2008. He accepted the job with Defendants to work at L'Amande French Bakery so that he could support his wife and three daughters, who remain in the Philippines. Fernando worked for L'Amande French Bakery beginning on September 16, 2011. He worked as a baker at L'Amande French Bakery Torrance from April 1, 2012, when the bakery opened for business, until July 9, 2014, when he transferred to the Beverly Hills

location. He then worked at the Beverly Hills location until January 22, 2015, when L'Amande French Bakery terminated him.

(3) Louise was born to a single mother and grew up poor. She paid her way through school by working as a personal assistant for a chef, who eventually recommended her to Ana. Ana hired Louise at Le Coeur de France in 1997, and Louise eventually worked her way up to production assistant. She never earned more than the equivalent of $400 USD a month. Louise continued working with the bakery after the Almeidas sold the company in 2008. She accepted the job with Defendants to work at L'Amande French Bakery so that she could support her partner and adopted son, who remain in the Philippines. Louise worked for L'Amande French Bakery beginning on September 16, 2011. She worked as a store manager at L'Amande French Bakery Torrance from April 1, 2012, when the bakery opened for business, until July 9, 2014, when she transferred to the Beverly Hills location. She then worked at the Beverly Hills location until January 20, 2015, when L'Amande French Bakery terminated her.

c. Defendants brought Romar Cunanan ("Romar") and Elmer Genito ("Elmer") to the U.S. on August 30, 2012.

(1) Romar was born in Manila to a poor family. His parents, two siblings, and he shared a one-bedroom apartment. He could not afford to attend college and began working as a car mechanic after graduating high school. In 2002, he began working at Le Coeur de France and eventually became a shift leader on the kitchen staff. Romar earned the equivalent of $166 USD a month. He continued to work at the bakery after the Almeidas sold the company in 2008. He accepted the job with Defendants to work at L'Amande French Bakery so that he could support his wife and two sons, who remain in the Philippines. Romar worked for L'Amande French

Bakery Torrance as a kitchen cook from September 1, 2012 until January 26, 2015, when L'Amande French Bakery terminated him.

(2) Elmer grew up in a poor family and began helping his mother harvest rice at age 5 to help provide for her and his nine siblings. He could not afford to attend college and began working full-time after graduating high school. In 2004, Ermita, helped him obtain a job at Le Coeur de France in Manila and he eventually became a baker with the company. He continued to work at the bakery after the Almeidas sold the company in 2008. Elmer earned the Philippine minimum wage, which was less than the equivalent of $110 USD a month as of 2012. He accepted the job with Defendants to work at L'Amande French Bakery so that he could support his son, who remains in the Philippines. Elmer worked for L'Amande French Bakery Torrance as a baker from September 1, 2012 until January 28, 2015, when L'Amande French Bakery terminated him.

d. Defendants brought Armelinda dela Cerna ("Armelinda") and Wilfredo Lariga Jr. ("Wilfredo") to the U.S. on April 30, 2013.

(1) Armelinda grew up in a family of six children; her father was frequently absent because he was in hiding from the authoritarian Filipino government. Her family could not afford to pay for her college education, so she paid for college on her own by working at a furniture shop. She began working for Le Coeur de France in 1995 and eventually became a purchasing manager, reporting directly to Goncalo. Armelinda earned the equivalent of $1000 USD a month. She continued to work at the bakery after the Almeidas sold the company in 2008. She accepted the job with Defendants to work at L'Amande French Bakery so that she could support her son, who remains in the Philippines. Armelinda has worked at L'Amande French Bakery Torrance as a store manager from May 1, 2013 until the present.

(2) Wilfredo grew up in a rural village in a poor family with eleven siblings. His home had no running water or electricity. He dropped out of school temporarily at age 15 to support his family after his father's death before returning to graduate high school at age 21. After graduation, he began working full-time. Wilfredo began working as a pastry chef at Le Coeur de France in 2007 and continued to work at the bakery after the Almeidas sold the company in 2008. He earned the equivalent of about $245 USD a month. In 2011, the new ownership laid him off when his contract ended. At the time he agreed to work for L'Amande French Bakery, he was working as a kitchen chef at another restaurant in the Philippines. He accepted the job with Defendants to work at L'Amande French Bakery so that he could support his girlfriend and his ailing mother, who remain in the Philippines. Wilfredo worked at L'Amande French Bakery Torrance as a kitchen cook from May 1, 2013 until July 16, 2014, when he transferred to the Beverly Hills location, where he currently works.

e. Defendants brought Recky Puzon ("Recky") and Ronaldo Santia ("Ronnie") to the U.S. on August 27, 2013.

(1) Recky grew up in a poor family in Manila, as his mother did not work and his father was a part-time car mechanic. Recky, his parents, and his three siblings lived in the auto body shop where his father worked. He dropped out of school at age 16 so that he could work to help support his family. In 1998, he began working at Le Coeur de France and eventually became a pastry chef. Recky earned the equivalent of $166 USD a month. He continued to work at the bakery after the Almeidas sold the company in 2008. He accepted the job with Defendants to work at L'Amande French Bakery so that he could support his wife, his two children, and his siblings, who all remain in the Philippines. Recky has worked at

L'Amande French Bakery Torrance as a kitchen cook from August 30, 2013 until the present.

(2) Ronnie grew up sharing a small, one-bedroom house with his parents and four siblings. He and his siblings all worked part-time on a sugar cane plantation with their father to help support the family. Ronnie began working full-time after high school. In 1999, he began working at Le Coeur de France, and eventually became a baker. Ronnie earned the equivalent of $166 USD a month. He continued to work at the bakery after the Almeidas sold the company in 2008. He accepted the job with Defendants to work at L'Amande French Bakery so that he could support his wife and two children, who remain in the Philippines. Ronnie has worked at L'Amande French Bakery Torrance as a baker from August 30, 2013 until the present.

f. Defendants brought Rolando Suratos ("Rolando") to the U.S. on March 4, 2014. Rolando grew up in Manila in a poor family with seven siblings. He began working full-time after he graduated high school. In 1995, he began working at Le Coeur de France and eventually became a pastry chef. He continued to work at the bakery after the Almeidas sold the company in 2008. Rolando's salary at Le Coeur de France was the equivalent of about $222 USD a month. Rolando worked for L'Amande French Bakery Torrance from March 8, 2014 through July 9, 2014, first as a dishwasher and then as a baker. He transferred to the Beverly Hills location on July 16, 2014, where he has worked until the present.

14. Each of the Workers reside in Los Angeles County, California.

**B. <u>Defendants</u>**

15. French Concepts Inc., dba L'Amande French Bakery, is a California corporation with more than five employees, and is located at 2553 Pacific Coast Highway, Torrance, California. Its headquarters and principal place of business are in Los Angeles County, California. The business opened to the public on April 1, 2012. All 11 Workers worked at this

location.

16. French Concepts BH, dba L'Amande French Bakery, is a California corporation with more than five employees, and is located at 9530 South Santa Monica Boulevard, Beverly Hills, California. Its headquarters and principal place of business are in Los Angeles County, California. The business opened to the public on July 16, 2014. Five of the Workers worked at this location.

17. Baratow, LLC is a California limited liability company that owns the 17-unit Apartment Complex in Long Beach, California. On information and belief, Baratow LLC employs at least five people and its headquarters and principal place of business are in Los Angeles County, California. The company was incorporated in September 2008. On information and belief, the Almeidas derive rental income from Baratow, LLC.

18. On information and belief, Analiza Moitinho de Almeida ("Ana") is the co-owner of French Concepts Inc. and French Concepts BH and holds the position of Executive Chef of L'Amande French Bakery. She selected, hired, and arranged for the Workers to come to the U.S. to work for L'Amande French Bakery, including preparing their E-2 visa applications sponsored by French Concepts, and supervises all operations at L'Amande French Bakery in both the Torrance and Beverly Hills locations. On information and belief, Ana is also a member and principal of Baratow, LLC.

19. On information and belief, Goncalo Moitinho de Almeida ("Goncalo") (together with Ana, the "Almeidas"), Ana's husband, is the co-owner and President of French Concepts Inc. and French Concepts BH as well as the CEO of French Concepts Inc. On information and belief, Goncalo also facilitated obtaining E-2 visas for the Workers in the Philippines. Goncalo also manages and supervises all operations and personnel at L'Amande French Bakery in both the Torrance and Beverly Hills locations. On information and belief, Goncalo is also a member and principal of Baratow, LLC.

20. On information and belief, each Defendant is the alter ego and joint employer of, and is working in joint enterprise with, each and every other Defendant. Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned in this Complaint, each and

every Defendant was the agent or employee of each and every other Defendant, and in doing the acts alleged, was acting within the course and scope of such agency or employment, with the consent, provision, and authorization of each of the remaining Defendants. All actions of each Defendant were ratified and approved by every other Defendant.

21. Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned in this Complaint, each and every Defendant entered into a conspiracy and agreement with every other Defendant, or later joined that conspiracy and ratified the acts and conduct of other defendants who had entered the conspiracy. Plaintiffs are further informed and believe, and on that basis allege, that at all times mentioned in this Complaint, all Defendants knowingly, maliciously, and willfully entered into that conspiracy. All Defendants' acts and failures to act as alleged in this Complaint were perpetrated in furtherance of the conspiracy.

## IV. FACTUAL ALLEGATIONS

### A. The Scheme

22. Defendants abused the E-2 visa process to bring the Workers to the United States to work at their bakeries for substandard wages and working conditions. The E-2 visa allows a wealthy foreign national who has invested a substantial amount of capital in a U.S. business to bring foreign workers to the U.S. because they will be engaged in duties of an executive or supervisory character or because they possess "specialized" skills that are "essential" to the company's operation.

23. Defendants hired the Workers for positions at the bakeries in the U.S. None of them had ever visited the U.S. They had limited English skills and little to no understanding of U.S. customs and laws. None of them knew about the U.S. cost of living. Ana told the Workers they would earn enough money to provide a better future for their families. She also told some of them that they would receive a good pension for retirement and that they could possibly obtain permanent residency in the United States, which would allow them to bring their immediate families to the U.S. Trusting Ana, the Workers agreed to leave their families and homes in the Philippines to work in the U.S.

24. Defendants made misrepresentations to the Workers regarding their hours, pay,

and working conditions. Ana filled out the Workers' visa applications with false information and submitted them to the U.S. Embassy. On information and belief, she also submitted documents on behalf of French Concepts containing false statements about how much the Workers would be paid and the full extent of the kind of work they would perform in the U.S. When the Workers received their visas, Ana told some of them that the visa was a contract requiring them to work for Defendants for the entire five-year length of the visa. Ana did not tell the workers that they were obligated to repay her for their visa processing and travel expenses if they left L'Amande French Bakery before their visa expired.

25. Defendants brought the Workers to the U.S. in several groups from 2009 to 2014. Once the Workers arrived in the U.S., Defendants subjected them to exploitative, substandard working conditions, including working long hours without breaks, receiving less than minimum wage, and enduring discriminatory and abusive treatment. When the Workers complained, Defendants responded that the Workers had no choice but to continue working, or else the Workers would have to pay the Almeidas an unaffordable monetary penalty.

### B. Fraud in Contracting the Workers

#### 1. Defendants misrepresent the Workers' hours, pay, and working conditions to lure the Workers to the U.S.

26. The Almeidas first hired Gina to move to the U.S. with the Almeidas and work as a live-in nanny for their youngest son, Lorenzo, for $300 USD per month. In spring 2009, Ana represented that Gina would be responsible for caring for Lorenzo only; she would not be a domestic servant. Ana told Gina that she would pay for all expenses to bring her to the United States, including airfare and the visa application fee. Gina agreed to employment on these terms. In June 2009, Ana arranged and paid for Gina's travel expenses.

27. Defendants hired the remaining ten Workers to work for French Concepts Inc. French Concepts Inc. secured a location in Torrance, California to open the first L'Amande French Bakery.

28. Ermita, Fernando, and Louise were the first Workers hired by French Concepts Inc. All three had worked for the Almeidas' bakeries in the Philippines. On March 30, 2011, Ana

met them and told them she was opening a new bakery in the U.S. She promised to pay each of them $2,000 USD per month to work at this bakery. She also told them she would raise their salaries if the bakery was successful. Ana wanted Ermita to supervise the kitchen, Fernando to serve as the master baker, and Louise to manage the store. Finally, Ana promised to pay for all airfare and visa expenses necessary for relocating to the U.S. Ana also mentioned that they may eventually be able to obtain permanent residency in the U.S. through this opportunity. Ermita, Fernando, and Louise agreed to employment on these terms.

29. In July 2012, Ana met with the remaining Workers (Armelinda, Romar, Elmer, Recky, Ronnie, Wilfredo, and Rolando) in the Philippines. They had all worked for the Almeidas' bakeries in the Philippines. Ana told them she had a bakery in the U.S. that was doing very well and that the Almeidas were planning to open a second location and would need some of them for that location.

30. Ana told Armelinda that Defendants would pay her $2,000 USD per month to work in a managerial role, with a guaranteed performance review after six months that could lead to a raise. Ana told Elmer, Recky, Rolando, Romar, Ronnie, and Wilfredo that Defendants would hire them as bakers or kitchen cooks. Ana stated that Defendants would pay them each $1,000 USD per month for the first six months and then $2,000 USD per month thereafter. Ana also told all seven of the Workers present that Defendants would pay them tips after six months of employment. Ana did not inform them they would have to repay the expenses she paid to bring them to the U.S. She also stated that the Workers could possibly receive a pension for retirement, even if they eventually returned to the Philippines, and that they might be able to obtain permanent residency in the U.S. through this opportunity. The Workers understood and agreed to these terms.

31. After Rolando received his E-2 visa but before he left the Philippines, Ana threatened that she would not hire him unless he accepted a salary of $500 per month. Not knowing that this amount of income was insufficient to support himself in the U.S., and intimidated by Ana, he agreed.

**2. Defendants submit documents with false statements to the U.S. Embassy to obtain visas for the Workers.**

32. Ana knowingly provided documents with false statements to the U.S. Embassy in the Philippines for all 11 Workers in order to secure visas for them to come to work for her and her businesses in the U.S. For the ten Workers hired by French Concepts Inc., Ana submitted these documents in her capacity as an agent of French Concepts Inc.

33. Ana signed an employment contract falsely stating she would pay Gina $9.80 per hour and instructed Gina to submit that contract to the U.S. Embassy for purposes of obtaining a visa. In reality, Ana only intended to pay Gina $300 per month. Ana had previously given Gina a contract indicating she would pay Gina $8.90 per hour, but the Embassy interviewer had refused to grant Gina a visa unless she stood to earn at least $9.80 per hour. Based on Ana's false employment contract, the U.S. Embassy issued a visa for Gina to come to the U.S. to work.

34. The remaining ten Workers obtained E-2 visas as employees of French Concepts based on false representations that they would each be making over $2,000 per month to work as specialists, managers, or supervisors for Defendants' U.S. bakery. To obtain an E-2 visa, the applicant must submit Form DS-160, to be completed by the applicant, and Form DS-156e, to be completed by the employer. The DS-156e requires a responsible officer of the employer to "solemnly swear or affirm that all statements which appear in this application are true and complete to the best of my knowledge and belief."

35. On information and belief, the Almeidas, acting as officers of French Concepts, signed the DS-156e for each E-2 visa application and submitted it to the U.S. Embassy. On information and belief, this form falsely stated the Workers' salaries would be more than $2,000 per month. In addition, this form stated the Workers would be employed as managers, supervisors, or specialists. In reality, French Concepts assigned some of the Workers exclusively non-specialized tasks for months at a time, and all of the workers engaged in non-specialized tasks as a substantial part of their job duties.

36. On information and belief, Ana completed and submitted the Workers' online DS-160 forms and entered false statements regarding their salaries and job duties. In April 2011, Ana

completed and submitted the applications for Ermita, Fernando, and Louise. In July 2012, Ana completed and submitted the applications for the other Workers (Armelinda, Elmer, Recky, Romar, Ronnie, Rolando, and Wilfredo). These Workers did not see their DS-160 forms until Ana gave them a copy of the already-submitted forms.

37. Based upon Ana's false statements, the U.S. government issued E-2 visas to these ten Workers to come to the U.S. to work for French Concepts.

**C. Broken Promises: Workers Arrive in U.S.**

38. Defendants brought the Workers to the U.S. in several groups. First, Gina arrived in Los Angeles, California on September 24, 2009. Second, Ermita, Fernando, and Louise arrived in Los Angeles on September 16, 2011 and worked to prepare the first location of L'Amande French Bakery for its opening on April 1, 2012. Third, Elmer and Romar arrived on August 30, 2012. Fourth, Armelinda and Wilfredo arrived on April 30, 2013. Fifth, Recky and Ronnie arrived on August 27, 2013. Finally, Rolando arrived on March 4, 2014.

39. Upon the Workers' arrival in the U.S., Defendants immediately subjected them to abusive working conditions that were contrary to what Defendants had represented to the Workers and the U.S. government in the Philippines.

**1. Defendants force the Workers to perform manual, unskilled labor that was contrary to what Defendants represented.**

40. Defendants made some of the Workers perform manual, unskilled labor, including work as domestic servants for the Almeidas personally and for their Apartment Complex. In addition, Defendants made some Workers perform manual, unskilled tasks as a substantial part of their job duties for French Concepts, contradicting Defendants' earlier representations.

41. Gina agreed to work for the Almeidas as their live-in nanny for their son Lorenzo. But the Almeidas also required her to perform manual labor and other work contrary to their agreement. In fact, less than 20 percent of Gina's labor was spent on nanny duties. The vast majority of her time was spent as a domestic servant for the Almeidas, where her job duties included preparing meals, doing laundry, cleaning, performing other household chores, and shopping for their family.

42. Defendants also forced Gina to work full-time as a kitchen cook at L'Amande French Bakery from April through July 2012, although she had not agreed to do such work.

43. Upon their arrival to the U.S., Ermita, Fernando, and Louise lived at the Almeidas' residence for four months, during which time they worked as domestic servants in addition to their work developing recipes and performing other tasks to prepare L'Amande French Bakery for opening. All three slept on the floor of the Almeidas' laundry room and were regularly made to do laundry, clean the Almeidas' house, car, and garage, perform yard-work, and cook for the Almeidas' family. They could not leave the house without asking permission. They were also required to put up Christmas decorations and paint the living room. Even after Ermita, Fernando, and Louise moved to a separate apartment in January 2012, the Almeidas still often required them to perform chores for their personal benefit. For example, on February 5, 2012, the Almeidas required that they walk two and a half miles from their apartment to the Almeidas' house to prepare food for the Almeidas' Super Bowl party.

44. The Almeidas also forced Gina, Ermita, Fernando, and Louise to perform work for the Apartment Complex. The Almeidas made these workers clean, paint, perform yard-work and landscaping, perform flooring work, repair and construction work, and carry out other manual labor at the Apartment Complex.

45. The Almeidas also required Louise to perform accounting tasks for the Almeidas in their personal capacity and for the Apartment Complex.

46. Defendants forced Ermita, Fernando, and Louise to perform manual labor to prepare L'Amande French Bakery's Torrance location for opening. For example, they were required to assemble furniture and clean the second-hand equipment Defendants bought for L'Amande French Bakery.

47. The Almeidas also made Elmer, Romar, Recky, and Ronnie perform physical domestic chores for the Almeidas in their personal capacity. In October 2012, Ana picked up Elmer and Romar from L'Amande French Bakery and took them to the Almeidas' home to clean the windows. In December 2013, the Almeidas required Recky and Ronnie to clean, perform yard-work, and put up the Almeidas' Christmas lights at the Almeidas' home. They also required

Recky and Ronnie to take down the Christmas lights after the holiday season.

48. Even after the Torrance location of L'Amande French Bakery opened in April 2012, Defendants continued to require the Workers to perform a significant amount of menial, unskilled work at the bakery that was different than the work they agreed to do. For example, Recky agreed in the Philippines to work for French Concepts as a pastry chef, but Defendants instead required him to work as a prep cook in the kitchen, performing tasks such as chopping carrots and peeling potatoes. Rolando also agreed in the Philippines to work for French Concepts as a pastry chef, but Defendants required him to work as a full-time dishwasher when he first arrived.

**2. Defendants force the Workers to work longer and for less than what was promised and what is required by U.S. law.**

49. None of the Workers were paid minimum wage or overtime at any time before the California Division of Labor Standards Enforcement ("DLSE") began investigating French Concepts in December of 2013. All of the Workers were paid less, and worked longer hours, than they were promised in the Philippines. Defendants compensated the Workers at an amount below that required by state and federal law.

50. The minimum wage in California when the first groups of Workers began working for Defendants was $8.00 per hour. On July 1, 2014, the minimum wage increased to $9.00 per hour. California law also requires employees be paid overtime for any hours worked in excess of eight hours per day or forty hours per week. Employers must pay employees 1.5 times their hourly wage for all hours worked in excess of eight hours up to and including 12 hours in any workday, and two times their hourly wage for all hours worked in excess of 12 hours in any workday. California law prohibits employers from requiring employees to work for seven days in one workweek. If an employee does so, California law requires they be paid 1.5 times their hourly wage for the first eight hours worked on the seventh workday of the workweek, and two times their hourly wage for hours worked in excess of eight on the seventh workday of the workweek. Defendants repeatedly violated these laws in employing the Workers.

51. Ana told Gina in the Philippines that Gina would only be responsible for caring

for Ana's son Lorenzo. However, because of the extra domestic chores and manual labor the Almeidas required her to do, she worked much longer hours. Still, the Almeidas only paid her $300 a month from September 2009 until May 2010. Starting in May 2010, she worked at the Apartment Complex in addition to their home. She often worked 15 hours per day, from 7 a.m. to 10 p.m., but the Almeidas only increased her salary by $100 a month, to $400 a month. In September 2010 the Almeidas moved to a larger house, so Gina worked more than 16 hours per day, starting each day at 5:30 a.m., but the Almeidas still paid her only $400 a month.

52. Starting in April 1, 2012, Defendants also required that Gina work at L'Amande French Bakery in addition to her work for the Almeidas in their personal capacity. In all, she worked 17 to 18 hours a day, from roughly 3:30 a.m. until at least 9:00 p.m. each night. For the month of April, she still received only $400 for the month, or less than one dollar an hour. From the end of May until August 2012, when she quit working for Defendants, Defendants paid her only $1,200 per month.

53. Defendants also required Ermita, Fernando, and Louise to work long hours and paid them less than had been agreed and less than required by law. From the time they arrived in the U.S. in September 2011, these Workers worked full time preparing L'Amande French Bakery for opening as well as working personally for the Almeidas and the Apartment Complex. Defendants paid these Workers only $420 a month for their first two months of work and then $370 a month until March 2012, when Defendants paid these Workers $500.

54. In the months following L'Amande French Bakery's opening, the Workers who had already arrived worked even longer hours. In April, Ermita, Fernando, and Louise worked 13 to 17 hours per day. Ermita received only a single day off the entire month, and Fernando and Louise did not receive any days off the entire month. Defendants paid these Workers only $1,000 each for the month of April. In May, Ermita, Fernando, and Louise worked ten to twelve hours each day. Fernando and Louise did not receive a day off of work in May. Defendants paid them only $1,000 every two weeks. Thereafter, the Workers continued working long hours. For example, in June, Fernando and Louise still did not receive any days off. These Workers were not paid the $2,000 they were promised until May 2012, eight months after arriving in the US.

Even then, this number was well below minimum wage given the number of hours they worked.

55. Romar and Elmer also worked longer hours than Defendants represented to them and for substandard pay. They worked at least ten hours per day and neither received a day off during their first month of work in September 2012. They were paid only $1,000 a month for their first six months. Defendants had promised to pay these Workers $2,000 per month after six months, but they paid Elmer only $1,800 per month for the next two months before his compensation increased to $2,000 per month. Nonetheless, this number was still below minimum wage given the number of hours Elmer and Romar were working.

56. Armelinda and Wilfredo also worked longer hours than Defendants represented to them and for substandard pay. They worked for ten to twelve hours a day, seven days a week. Wilfredo did not get a single day off his first three weeks working for Defendants. Despite these long hours, Defendants paid Wilfredo only $100 for his first month of work, May 2013. Beginning in June 2013, Defendants paid him $1,000 a month for the next six months before raising his pay to $2,000 a month. Defendants paid Armelinda $2,000 per month from her first month onwards. Although Defendants promised to pay Wilfredo and Armelinda tips after six months, they did not receive tips until March 2014, ten months after they began work.

57. Recky and Ronnie also worked full-time for substandard pay. Defendants required them to work nine hours a day, six days a week. Recky and Ronnie did not get any days off for the first two weeks. They were paid only $1,000 per month, without tips, for six months, and then were paid $2,000 per month.

58. Finally, Rolando also received substandard pay. Although he worked at least 40 hours per week, Defendants paid him only $500 a month, or less than four dollars an hour at most.

59. When Defendants prepared to expand L'Amande French Bakery to a second location in Beverly Hills, Defendants told Ermita, Fernando, Louise, and Wilfredo that if these Workers transferred to the new location, they each would be paid an additional $500 per month. However, Defendants never paid them the additional amount.

60. In addition to working long hours for low pay, Defendants routinely denied all 11

Workers their proper meal and rest periods. Under California law, an employer is required to provide an employee with a meal period of at least 30 minutes if the employee works for more than five hours per day and with a second meal period of at least 30 minutes if the employee works for more than ten hours per day. If the employee works no more than 12 hours, the second meal period may be waived by mutual consent of the employer and employee. An employer may require the employee to remain at the work site during the meal period only with the employee's written consent, and the meal period must be paid. Under California law, an employer is also required to provide an employee with a rest period at a minimum rate of ten minutes for each four hours worked, and insofar as practicable such rest period must be provided in the middle of each work period. Rest periods are counted as time worked and so must be paid. Defendants repeatedly failed to offer the Workers meal and rest periods of the required length and frequency.

61. Defendants only allowed the Workers take at most one thirty-minute meal period per day regardless of how many hours they worked, and the Workers were required to stay on site. Defendants also regularly denied the Workers any rest period for each four hours worked. Louise, for example, worked the entire month of April without a day off or meal or rest periods, and got her first meal period one day in May 2012 at 2:00 or 3:00 p.m. after having started work at 6:00 a.m. that day.

62. Defendants also failed to provide accurate wage statements to the Workers. Gina never received wage statements during her employment with Defendants. Ermita, Fernando, and Louise never received wage statements until L'Amande French Bakery opened in April 2012 and then only sometimes received wage statements. Rolando only started receiving wage statements in June 2014, three months after he started working. In addition, until May 2014, after Defendants were cited for California labor law violations, all the Workers who were receiving wage statements at the time received statements that underreported the number of hours they worked. On information and belief, Defendants falsified this information to avoid paying the Workers overtime and to conceal evidence that Defendants were compensating the Workers at below minimum wage.

**D. Harassment, Discrimination, and Threats**

63. From the time the Workers arrived in the U.S., Defendants engaged in a pattern of discrimination and harassment against them based on the Workers' race, ethnicity, ancestry, and national origin. Defendants then retaliated against the Workers for their complaints about this discrimination and their working conditions.

**1. Defendants harass and abuse the Workers.**

64. Defendants emotionally and verbally abused Gina during her employment for the Almeidas in their personal capacity and when she worked at L'Amande French Bakery. For years, Ana regularly yelled and screamed at Gina, belittled her, and humiliated her in front of other family members including Lorenzo, for whom Gina had cared for nine years and loved like a son. When Gina asked for better working conditions, Ana's verbal abuse escalated; Ana told Gina that she had no right to complain, as Gina was "nothing, a nobody." When the other Workers arrived, Ana warned them not to trust Gina in order to further isolate and emotionally injure her.

65. Defendants also subjected all the Workers to harassment and an abusive working environment at L'Amande French Bakery. Ana regularly yelled and screamed at them even though they had not done anything meriting discipline. She also regularly threatened and belittled the Workers, especially when they complained about their working conditions. For example, in one instance in in June 2012, Ana repeatedly slammed her hands on a table in the bakery and screamed that they needed her far more than she needed them. She then warned that if any of them complained any further, she would send them straight back to the Philippines and ruin their lives and those of their families. Another time, she screamed at Gina and Ermita for eating together even though she had given them permission to do so the previous day. Goncalo also was frequently rude and disrespectful when talking to the Workers. Several of them heard him say multiple times that Filipinos were "pigs" who ruined L'Amande's bathrooms whenever they used them.

66. Defendants also tried to isolate and control the Workers. Ana discouraged them from socializing and making friends with anyone else at work or in their personal lives.

Eventually, she attempted to forbid the Workers from even including non-Filipinos in pictures they took outside of work. Ana and Goncalo repeatedly told several of the Workers not to invite their Filipino friends to the bakery and to avoid congregating together.

67. Defendants also ordered the Workers not to speak Tagalog even if they were working in the kitchen, away from customers, and did not inform them of the consequences of violating the policy. Defendants once told the Workers to never speak Tagalog on bakery premises because this "was not a Filipino restaurant, it's for white people."

68. In contrast, Defendants treated the other employees politely and never yelled at or belittled them. Additionally, the Almeidas did not attempt to isolate or limit the personal lives of the other employees.

69. Furthermore, Defendants allowed other employees to speak with each other in other non-English languages, such as Spanish. Moreover, Goncalo spoke in Spanish to the Spanish-speaking employees.

**2. Defendants discriminate against the Workers.**

70. Defendants treated the Workers differently from non-Filipino employees in several ways: Defendants required the Workers to work longer hours for less than the minimum wage and without overtime, failed to provide the Workers with adequate meal periods; subjected them to harassment and abusive working conditions; punished them for speaking Tagalog while allowing other employees to speak in non-English languages; required the Workers to do menial tasks that non-Filipino employees in similar jobs were not required to do; and forbade the Workers from using timecards to accurately reflect all of their time worked.

71. As described above, at no point before DLSE began investigating Defendants for California Labor Code violations did Defendants ever pay the Workers minimum wage. They also did not pay the Workers overtime rates even though they regularly worked more than eight hours per day and forty hours per week. The non-Filipino employees received at least the minimum wage as well as overtime rates for any overtime hours. In addition, if the non-Filipino employees were asked to work on a day off, they were compensated for this time, while the Workers were not. For example, both the Workers and other non-Filipino employees of

Defendants were assigned to do a general cleaning of the premises on a day L'Amande French Bakery was closed every three months. The Workers were not compensated for doing this work even if it was their day off, while the non-Filipino employees were. Even after the DLSE investigation commenced, Defendants paid the Workers less than they paid non-Filipino employees doing the same work. Armelinda, for example, was not given a raise even though the other store managers were.

72. Defendants also forbade the Workers from using timecards to accurately reflect their time but allowed other non-Filipino employees to do so. Gina was never allowed to use a timecard from the time the bakery opened in April 2012. In October 2012 Ana removed the timecards for Ermita, Fernando, and Louise, as well as for Elmer and Romar who had since arrived. Ana also ordered Louise to destroy the Workers' timecard records. None of the non-Filipino employees were subject to this treatment.

73. Defendants also marked down the Workers' hours for purposes of calculating tips. Because Defendants' maintained a practice of tipping employees in proportion to the number of hours' worked, the markdown caused the Workers to earn less tip money per actual hour worked than non-Filipino employees.

74. As described above, Defendants denied the Workers their proper meal periods. Defendants permitted non-Filipino employees to take two thirty-minute meal periods if they worked more than eight hours per day, while the Workers were only allowed one, and usually not during peak hours.

75. In addition, Defendants required the Workers to do menial tasks non-Filipino employees were not required to do. When a dishwasher position opened, Defendants required Elmer, Recky, Romar, Ronnie, and Wilfredo to work in rotations washing dishes to cover the position. Defendants did not require any other employees to do this. Some Workers were required to open and close the store for fumigation every first Wednesday of the month and they were not compensated for this extra time. Defendants did not require any non-Filipino employees to perform these tasks.

**3. Defendants coerce the Workers by unilaterally imposing an exorbitant debt and also threatening other harm.**

76. Defendants used threats, intimidation, and misrepresentations to force the Workers to continue working for Defendants in spite of the low wages, grueling hours and abusive working conditions.

77. Ana misrepresented to some of the Workers that they were contractually obligated to work for Defendants for five years. For example, when Ermita and Fernando received their five-year visas, Ana told them that the visa meant that they were contractually obligated to work for Defendants for five years.

78. After the Workers arrived in the U.S., when they complained about the long hours and abusive working conditions, Defendants responded with threats. For example, in December 2011, when Ana heard Louise expressing a desire to return to the Philippines because of the difficult living conditions and unexpected hard labor, she flew into a rage, screaming at Ermita, Fernando, and Louise. She told them for the first time that they would have to pay back all the expenses she spent on bringing them over. This was contrary to her earlier promise that she would pay for all costs for bringing them to the US and it was not a loan. Ana later told Gina, "If [Louise] wants to go back to the Philippines, she needs to pay me the money I spent to bring her here."

79. After the Workers had either already reached the U.S. or were at the airport in the Philippines preparing to board their flight to the U.S., Defendants unilaterally imposed a fictitious debt on the Workers, claiming the Workers owed Defendants $11,000 or more for the cost of bringing them to the US. These costs were in fact far less than $11,000. At the time the Workers had agreed in the Philippines to work for Defendants and Defendants paid for the Workers' visa and travel expenses, Defendants had never told any of the Workers that the Workers would be obligated to repay Defendants for these expenses. To the contrary, when Defendants hired the Workers, Ana specifically told some of them that these expenses were not a loan and they would not be obligated to pay her back.

80. In July 2013, the Workers (Ermita, Fernando, Louise, Elmer, Romar, Armelinda,

and Wilfredo) began questioning why they were required to work more than 40 hours per week and did not get two days off per week like the other employees. The group asked Louise to discuss this with the Almeidas on behalf of the Filipino workers. When Louise did, Ana was furious and called a meeting of all the Workers. At this meeting the Almeidas yelled at the Workers and told them they should listen to her and endure the working conditions. The Almeidas threatened to punish Louise for asserting the Workers' rights by taking her to the airport and sending her back to the Philippines. Ana said that if anyone wanted to go home they could, but they would have to pay the more than $11,000 debt Ana claimed she owed them.

81. At this meeting, after the Almeidas threatened to send Louise back to the Philippines, Romar questioned how they could pay back the debt Ana claimed they owed. Two days later, on July 7, Ana gave the Workers whom she previously forced to sign documents falsely indicating they owed her $11,000 or more (Ermita, Fernando, Louise, Elmer, and Romar) a paper stating that if they worked for Defendants for three years, they would no longer owe Ana the debt she claimed they owed.

82. In August 2013, Ana required Wilfredo to sign a similar paper indicating he would owe her more than $11,000 if he did not work for Defendants for three years.

83. Defendants also threatened Recky and Ronnie with a substantial debt if they did not comply with Defendants' exploitative working conditions. In August 2013 when they were at their departure gate at the airport ready to board their flight to the U.S., Ana told them for the first time that they owed her money and she made them sign documents written in English reflecting this debt. Ana told them the documents stated that if they did not work for Defendants for three years then they would have to pay her $11,000 or more for the expenses she had paid to obtain their visas and airfare.

84. In May 2014, Ana gave Rolando a document stating that he would owe her $11,000 unless he completed three years of employment for Defendants.

**E. <u>Defendants Threaten and Intimidate the Workers to Impede the DLSE Investigation and to Cover Up Their Wrongdoing</u>**

85. On December 3, 2013, investigators from California's Division of Labor

Standards Enforcement ("DLSE") Bureau of Field Enforcement ("BOFE") audited French Concepts and interviewed Armelinda, Ermita, Romar, and Wilfredo. Ana instructed Louise that if the investigators returned then any Workers earning less than $1,000 per month were to leave the premises.

86. In January 2014 Ana ordered Louise to alter L'Amande French Bakery's work schedules so the Workers' scheduled hours would appear to match the payroll, which Ana had already manipulated make it appear the Workers worked fewer hours than they in fact worked. On information and belief, Defendants submitted these altered records to the DLSE.

87. In February 2014 Ana told several of the Workers that they were not eligible for overtime because they were exempt under FLSA.

88. As the DLSE continued its investigation—first by mailing the Workers a questionnaire, then by issuing citations to Defendants for violations of California labor law, and then by holding a hearing—Defendants threatened the Workers with termination, deportation, and financial ruin in the Philippines where Defendants wielded power and influence, unless the Workers cooperated with Defendants' scheme to conceal the Workers' illegal and abusive working conditions. When the Workers truthfully disclosed these violations, Defendants' threats escalated.

**1. Defendants threaten the Workers to intimidate them against answering the DLSE questionnaire truthfully**

89. In March 2014 the DLSE mailed questionnaires to Defendants' employees, including the Workers. The questionnaire asked about their salaries, work hours, and other facts relevant to their employment. Ana told the Workers that she would oversee them in filling out their forms.

90. On March 22, 2014 when Elmer and Ronnie asked whether Ana the law allowed to dictate their answers, she responded that while it might be against the law for the DLSE, it was not against the law for them as Filipinos. She screamed at them and threatened that if they did not comply with her, she would immediately cancel their visas and send them back to the Philippines. She also threatened to sue them in the Philippines.

91. These threats continued and escalated at a meeting the Almeidas called for all the Workers (except Rolando who had just arrived that month) a few days after the Workers received the questionnaire. At the meeting, the Almeidas spoke with the Workers in small groups. To some of the Workers Ana again threatened to cancel their visas and send them back to the Philippines if they did not cooperate and show her their responses to the questionnaire. She reiterated to some Workers that they were exempt employees not entitled to overtime pay and stated that if Defendants did pay them hourly then their visas would be voided. Ana also told some Workers to write that from their first month working for Defendants they had been paid $2,000 USD per month plus tips,. The Almeidas warned that if they did not comply, they would lose their jobs because the bakery would close. Defendants watched over some of the Workers as they filled out the questionnaire.

**2. Defendants threaten the Workers to intimidate them against telling the truth at the DLSE hearing.**

92. In May 2014 the DLSE cited French Concepts with several violations of the California Labor Code. Defendants appealed the citations so the DLSE scheduled a hearing for July 8, 2014. Defendants resumed threats and intimidation against the Workers to discourage them from telling the truth about their hours and pay to the DLSE. For example, on May 9, 2014 the Almeidas told Romar and Ronnie that they would have to lie about their work hours to the Almeidas' lawyer when he questioned them, or else the bakery would close due to the DLSE penalty and all the Workers would be sent back to the Philippines. Also on May 9 Ana met with Armelinda and Louise and told them that if they did not lie then everyone would lose their jobs. On May 16, the Almeidas picked up Ermita, Romar, Wilfredo and Louise from L'Amande French Bakery one by one and brought them to the Almeidas' house to intimidate them into lying about their work conditions.

93. Ana and Goncalo told Ermita that she was not allowed to testify against them. They also demanded that Ermita tell the DLSE that she had made a mistake in her previous disclosures and threatened that the DLSE was not on her side and might send her to jail. They also tried to intimidate Romar, but when Romar refused to comply, they told him they would

send him back to the Philippines. When he refused to lie, Ana said she would sue him in the Philippines, take everything he had, and ruin his and his family's life. A few days later she threatened to Romar that if the DLSE won their case then they would lose their visa status. Ana demanded that Wilfredo falsely report that his $1,000 per month salary was due to him working just three days per week for six hours per day. Ana told him that that if any of the Workers fought back against the Almeidas' demands then they would lose their jobs. Finally, the Almeidas threatened Louise that if she did not lie to the DLSE, the Almeidas would send one of the Workers back to the Philippines and said that the DLSE might shut down the store and Ermita would be unable to find another job in the Philippines.

94. Ana again threatened Ermita on May 22 to pressure her to withhold information against L'Amande's interests. She told Ermita that if she did not lie then Goncalo would immediately close the bakery and everyone would be sent back to the Philippines. Ana threatened that in the Philippines where Ana's parents would come after Ermita and all of her savings.

95. On another occasion in May, Ana threatened Ermita and Louise that she would sue them in the Philippines and take everything they had "down to the last centavo."

96. On May 27 Ana demanded that Rolando reveal the identity of any Filipino workers who were planning to cooperate with the DLSE. Ana threatened that if anything went wrong in the legal investigation, she would send them back to the Philippines beginning with whomever arrived in the U.S. last. This made Rolando nervous because, as Ana knew, he was the most recent worker to come to the U.S. She warned Rolando that he was exempt from FLSA and thus not entitled to the benefits to which the DLSE said the Workers were entitled.

97. Around May 12 the Almeidas called a meeting with several of the Workers, including Armelinda, Elmer, and Recky to inform them that Defendants would reintroduce timecards for the Workers, but wanted them to falsify the records so it appeared they only worked 40-42 hours per week even when they worked longer. They gave the Workers two options: either (a) work on the clock for 8 hours per day, 5 days a week, and then also work off the clock for a 6th day; or (b) work on the clock for 6.5 hours per day, 6 days a week, and then

clock out and finish up any remaining work off the clock. The Workers started using timecards again on May 14, 2014. Ana again altered previous work schedules so they did show the Workers worked for more than 40-42 hours per week. Defendants Retaliate Against the Workers

98. On July 8, 2014, all the Workers (except Rolando who had not been contacted by DLSE) appeared at the DLSE hearing as witnesses against Defendants. The DLSE scheduled another hearing for more testimony, which was scheduled for February 10, 2015 and then rescheduled again for May 2015.

99. Shortly after the DLSE hearing, Defendants began issuing adverse employment write-ups against many of the Workers. None of the workers had received any write-ups before, and the Almeidas never complained of their conduct that allegedly served as the basis of the write-ups, which were pretextual and done to set the workers up for termination. All the Workers except Armelinda received at least one write-up.

100. In November 2014, the Workers filed individual wage claims with the DLSE. After issuing write-ups, Defendants terminated five of the Workers only a few weeks before the DLSE citation hearing scheduled for February 10, 2015 and several of the Workers' DLSE wage claim settlement conferences scheduled for February 24, 1015. Defendants terminated Louise on January 20, 2016. The alleged reason given for the termination was a picture of Louise, Ermita, Fernando, Romar, and Elmer drinking at the bakery more than two years earlier in September 2012. But the alcohol was provided by Goncalo for an after-hours celebration of the bakery's opening, and other employees were also drinking in the Almeidas' presence. Defendants also threatened to call the police and report that Louise possessed company property, a USB drive which Louise used to perform her job duties, even though she had returned the USB in in February or March 2014.

101. Defendants then terminated Ermita, Fernando, Romar, and Elmer. The reason given for the terminations was the same picture showing drinking at the bakery two years earlier in September 2012. Defendants terminated Ermita and Fernando on January 22, 2015, Romar on January 26, and Elmer on January 28.

**FIRST CAUSE OF ACTION**

**The Trafficking Victims Protection Act of 2003**

**For Forced Labor under 18 U.S.C. § 1589 and Trafficking with Respect to Forced Labor Under 18 U.S.C. § 1590**

**(By All Workers Except Gina Against All Defendants)**

102. The Workers[1] incorporate the foregoing paragraphs as if fully set forth here.

103. 18 U.S.C. § 1595 allows victims of forced labor under 18 U.S.C. § 1589 and § 1590 to recover damages and reasonable attorney's fees, both from the perpetrators and others who knowingly benefited from the violations.

104. A victim may bring a § 1589 claim under 18 U.S.C. § 1595 against any person, including any business entity, who knowingly provides or obtains the labor or services of another person, by means of actual or threatened serious harm, including financial harm, to the victim or a third party, or by means of actual or threatened abuse of the legal process. Serious harm encompasses not only physical violence, but also more subtle psychological methods of coercion.

105. Defendants subjected the Workers to verbal threats of serious harm and engaged in a pattern of conduct amounting to such threats, including psychological coercion.

106. Defendants threatened the Workers with serious harm by, for example, insisting that they would owe Defendants at least $11,000 unless they continued working for the Almeidas and their businesses for a certain number of years. The Workers did not believe that they would be able to repay this sum other than by working for Defendants. Defendants thus placed the Workers in a position where they could not afford to return to the Philippines, but otherwise could not legally work in the United States. The Workers were thus entirely dependent upon Defendants and would face serious harm if they attempted to resist their demands.

107. Defendants also engaged in a pattern of threats and misrepresentations calculated to make the Workers believe they would suffer this serious harm, including financial harm if

---

[1] For each cause of action in which it appears, "Workers" refers to the workers bringing the cause of action.

they attempted to resist their demands. Defendants also falsely represented to the Workers that their five year visas in fact constituted five year work contracts, falsely told the Workers that they were not entitled to the protection of wage and hour laws, threatened to ruin the Workers' and their families' lives, and discouraged the Workers from interacting with the non-Filipino employees, to isolate them and to prevent them from learning about their rights. Through these actions, the Almeidas engaged in psychological coercion, causing the Workers to feel that they had no choice but to continue to work for the Almeidas.

108. Defendants also subjected the Workers to verbal threats of abuse of legal process, as well as patterns of conduct amounting to such threats. Defendants caused the Workers to believe that they would suffer adverse immigration consequences, made possible by the Almeidas' manipulation of the E-2 visa process, if they failed to comply with their demands. Their legal status in the United States was dependent upon remaining employed by the Almeidas, and the Workers had no way to return to the Philippines, and had good reason to fear persecution if they did. Defendants used the Workers' lack of options as a tool to force the Workers to work illegally long hours for illegally low wages. In addition, Defendants caused the Workers to believe that if they did not comply with Defendants' demands, they would be sued in the Philippines by the Almeidas or their family, who the Workers perceived as having the ability to corrupt the Philippine justice system.

109. A victim may bring a § 1590 claim under 18 U.S.C. § 1595, against any person, including any business entity, who knowingly recruits, harbors, transports or obtains by any means any person for labor or services in violation of 18 U.S.C. §1589 and §1594.

110. Ana met with each of the Workers in the Philippines and recruited them to come work for her in the United States, arranged for their transportation to the United States and thus obtained their labor. Defendants violated 18 U.S.C. § 1590 by knowingly recruiting, transporting, and obtaining the Workers for labor and services in violation of 18 U.S.C. § 1589, as discussed above and by attempting to do so in violation of § 1594(a). On information and belief, Defendants conspired with each other to violate 18 U.S.C. §§ 1589 and 1590, in violation of 18 U.S.C. § 1594(b).

111. Through such actions, Defendants knowingly obtained the labor or services of the Workers in violation of § 1589 and § 1590. Each Defendant also, acting individually and in concert, benefited from their participation in such violations, with knowledge of, or reckless disregard for, French Concepts' and other Defendants' use of forced labor. French Concepts and French Concepts BH benefited from the violations by obtaining low-cost (below minimum wage) labor. Baratow, LLC, the entity through which the Almeidas own the Apartment Complex at which Gina, Ermita, Fernando, and Louise were forced to perform hard, manual landscaping and other labor, similarly benefitted from such low-cost labor. The Almeidas, as owners of these businesses, of course also benefitted from their violations.

112. As a result, the Workers sustained damages, including mental suffering, humiliation, emotional distress, and economic losses, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees.

113. Defendants are liable to the Workers for compensatory and punitive damages in amounts to be proven at trial.

**SECOND CAUSE OF ACTION**

**For Human Trafficking under California Civil Code § 52.5**

**(By All Workers Except Gina Against All Defendants)**

114. The Workers incorporate the foregoing paragraphs as if fully set forth here.

115. California Civil Code section § 52.5 allows a victim of human trafficking, as defined in California Penal Code § 236.1, to recover, in a civil action, actual damages, compensatory damages, punitive damages, and any other appropriate relief, as well as attorney's fees and costs of suit. California Civil Code § 52.5(b) allows a victim of human trafficking to recover treble damages.

116. A victim may bring a claim under California Civil Code § 52.5 against any person who violates or deprives the victim of his personal liberty with the intent to obtain forced labor or services, or who restricts the victim's liberty through fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury. Forced labor or services means labor or services that are performed or provided by a person, and are obtained or maintained through force, fraud, or

coercion, or equivalent conduct that would reasonably overbear the will of the person.

117. The Almeidas, acting in their personal capacities and as agents of the Defendants fraudulently contracted with the Workers in entering into the employment relationship and in bringing the Workers to the United States. They then used threats, intimidation, fraud, deceit and coercion to overbear the Workers' will, and to deprive them of liberty by forcing them to work long hours in poor conditions for minimal wages.

118. Through such actions, Defendants, acted with malice, oppression, fraud and duress, and subjected the Workers to a situation of human trafficking.

119. On information and belief, Defendants conspired with each other to violate California Civil Code § 52.5.

120. As a result, the Workers have sustained damages, including mental suffering, humiliation, emotional distress, and economic losses, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees.

121. Defendants are liable to the Workers for treble damages and punitive damages in amounts to be proven at trial.

**THIRD CAUSE OF ACTION**

**For Violations of the Federal Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1964**

**(By All Workers Except Gina Against all Defendants)**

122. The Workers incorporate the foregoing paragraphs as if fully set forth here.

123. 18 U.S.C. § 1964 allows persons injured in their business or property by reason of violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962, to bring suit against the persons violating the provision, and to recover three times the damages sustained, as well as the costs of the suit, including reasonable attorney's fees.

124. 18 U.S.C. § 1962(c) prohibits persons associated with an enterprise from conducting the affairs of the enterprise through a pattern of racketeering activity.

125. An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal

entity.

126. Each of French Concepts and French Concepts BH, both California corporations, and Baratow, LLC, a California limited liability company, constitutes an enterprise for RICO purposes. Their affairs— particularly their hiring and employment practices—were conducted through a pattern of racketeering activity.

127. In addition, Ana, Goncalo, French Concepts, French Concepts BH and Baratow, LLC, collectively constituted an association-in-fact enterprise that was conducted through a pattern of racketeering activity. One purpose of this ongoing business relationship was to take advantage of the cheap labor that the Almeidas, French Concepts, French Concepts BH, and Baratow have procured for themselves by abusing the E-2 visa process. The Almeidas, husband and wife and, on information and belief, managers of the several business entities, were closely associated with each other and with the entities and pursued their illegal purpose over the course of several years.

128. 18 U.S.C. § 1961(1) defines "racketeering activity" to include violations of 18 U.S.C. § 1589 (prohibiting forced labor), 18 U.S.C. § 1590 (prohibiting trafficking with respect to forced labor) 18 U.S.C. § 1546 (prohibiting making or presenting material false statements in documents required by the immigration laws or regulations) and 18 U.S.C. § 1351 (prohibiting fraud in foreign labor contracting).

129. The Workers incorporate the allegations of paragraphs 102 through 113 here. Defendants' violations of 18 U.S.C. § 1589 and § 1590 constitute racketeering activities.

130. 18 U.S.C. § 1546 imposes criminal penalties on anyone who knowingly makes or subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact.

131. On information and belief, Ana or Goncalo Almeida, acting as an officer of French Concepts, signed a DS-156e form and submitted such form to the U.S. Embassy. On information and belief, this form falsely stated the Workers' salaries would be more than Ana

orally promised the Workers, and significantly more than Defendants intended to pay the Workers, and significantly more than the Workers were ultimately paid. In addition, this form stated the Workers would be employed as managers, supervisors, or specialists. In reality, Defendants assigned some of the Workers to non-specialist positions, and all of the workers engaged in non-specialized tasks as a substantial part of their job duties.

132. Ana filled out the Workers' DS-160s and entered false statements regarding their salaries. In 2011, Ana completed Ermita, Fernando, and Louise's applications. In 2012, Ana completed the applications for the other Workers (Armelinda, Elmer, Recky, Romar, Ronnie, Rolando, and Wilfredo).

133. Ana thus knowingly made false statements of material fact in documents required by the immigration laws, and presented such documents to the Embassy, violating 18 U.S.C. § 1546, and thus engaging in racketeering activity.

134. 18 U.S.C. § 1351 prohibits fraud in foreign labor contracting, defined as knowingly, and with intent to defraud, recruiting, soliciting or hiring a person outside the United States for purposes of employment in the United States or causing another person to recruit, solicit, or hire a person outside the United States, or attempts to do so, by means of materially false or fraudulent pretenses, representations or promises regarding that employment.

135. The Almeidas solicited and recruited the Workers in the Philippines by means of one or more materially false or fraudulent pretenses, representations, or promises regarding working conditions and wages, including false representations as to the type of work the Workers would engage in and the amounts of money they could expect to earn. The Almeidas acted knowingly and with intent to defraud, violating 18 U.S.C. § 1351, and thus engaging in racketeering activity.

136. A "pattern" of racketeering activity exists when at least two related acts of racketeering activity take place within a ten year period.

137. The Almeidas committed multiple related acts of racketeering activity starting in March 2011, including fraudulently contracting with the Workers for employment in the U.S. and bringing them from the Philippines in multiple groups, committing visa fraud with regards to

each Worker, and engaging in forced labor by means of threats of serious harm to obtain the Workers' service.

138. As a result, the Workers have suffered injury and damages, including lost wages.

139. Defendants are liable to the Workers for treble damages in amounts to be proven at trial, and reasonable attorney's fees.

**FOURTH CAUSE OF ACTION**

**For Discrimination under the Fair Employment and Housing Act, Cal. Govt. Code § 12940**

**(By All Workers Except Gina Against All Defendants)**

140. The Workers incorporate the foregoing paragraphs as if fully set forth here.

141. The Fair Employment and Housing Act, Cal. Govt. Code §§ 12900-12996 ("FEHA"), prohibits discrimination in employment on the basis of national origin. Specifically, Cal. Govt. Code § 12940 prohibits an employer from discriminating against any employee in compensation, or in terms, conditions, or privileges of employment on the basis of national origin.

142. French Concepts and French Concepts BH were, at all relevant times, subject to FEHA, including the anti-discrimination provisions thereof.

143. The Workers were all of Filipino national origin, a protected class and were all qualified for the jobs for which they were hired. However, the Workers were frequently paid less than minimum wage, denied, partially and in some cases entirely, the opportunity to share in tips paid by customers, compelled to work well in excess of forty hours per week without overtime pay, forced to complete job duties outside of those stated in their employment contracts, denied meal periods required by law, and were forced to destroy or not keep timecards to hide evidence of their employer's violations. Other employees who were not of the Filipino national origin did not suffer equivalent adverse actions.

144. Through such actions, French Concepts and French Concepts BH have violated Cal. Govt. Code § 12940.

145. As a direct and proximate result of these actions, the Workers have sustained

damages, including lost wages, mental suffering, humiliation, emotional distress, and economic losses, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees. Moreover, Defendants' conduct was willful, exploitative and malicious, and punitive damages are warranted.

146. Within the time provided under FEHA, the Workers filed complaints against French Concepts and French Concepts BH with the Department of Fair Employment and Housing alleging disparate treatment as compared to non-Filipino workers, harassment, illegal language restrictions and retaliation. Also within the time provided, the Workers received right-to-sue letters. Attached to this complaint, and incorporated into the complaint by reference as Exhibit "A," are true and correct copies of the charges filed and true and correct copies of the right-to-sue notices received by the Workers.

**FIFTH CAUSE OF ACTION**

**For Unlawful Restrictions on the Use of a Language under**

**FEHA, Cal. Govt. Code § 12951(a)**

**(By All Workers Except Gina Against All Defendants)**

147. The Workers incorporate the foregoing paragraphs as if fully set forth here.

148. Cal Govt. Code § 12951(a) prohibits an employer from adopting a restriction on the use of any language in the workplace, unless the restriction is justified by a business necessity and the employer has notified its employees of the circumstances and the time when the restriction is to be observed, and of the consequences for violating the restriction.

149. Defendants prevented the Workers from speaking Tagalog while on duty, while allowing other employees to converse with each other in other non-English languages. There was no business necessity for the Tagalog restriction, which applied even when no customers were present and even to conversations involving only Tagalog-speaking employees in the kitchen. The Workers were not notified of the circumstances and the time when the Tagalog restriction was to be observed, or of the consequences for violating the restriction.

150. Through such actions, Defendants have violated Cal. Govt. Code § 12951.

151. As a direct and proximate result of these actions, the Workers have sustained

damages, including mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees. Moreover, Defendants' conduct was willful, exploitative and malicious, and punitive damages are warranted.

**SIXTH CAUSE OF ACTION**

**For Unlawful Harassment under FEHA, Cal. Govt. Code § 12940(j)**

**(By All Workers Except Gina Against All Defendants)**

152. The Workers incorporate the foregoing paragraphs as if fully set forth here.

153. Cal Govt. Code § 12940(j) prohibits an employer from unlawfully harassing employees. Individual supervisors who engage in harassment against employees can also be held personally liable.

154. Defendants violated Cal. Govt. Code § 12940(j) by harassing the Workers based on their Filipino national origin. They consistently belittled, humiliated, and socially isolated the Workers, but did not subject non-Filipino employees to the same treatment. The Almeidas made derogatory statements about Filipinos to the Workers and in their presence, claiming that L'Amande French Bakery was "not a restaurant for Filipinos but for white people," and referring to the Filipinos workers as "pigs." Defendants also subjected the Workers to a restrictive language policy whereby they were not allowed to speak their native Tagalog despite the fact that most of the workers spoke little English. The Workers were offended by this conduct. The treatment was sufficiently pervasive to alter the conditions of the Workers' employment and to interfere with their psychological well-being.

155. Through their agents' actions, French Concepts Inc. and French Concepts BH have also violated Cal. Govt. Code § 12940(j).

156. As a direct and proximate result of these actions, the Workers have sustained damages, including mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees. Moreover, Defendants' conduct was willful, exploitative and malicious, and punitive damages are warranted.

**SEVENTH CAUSE OF ACTION**

**For Retaliation for Activities protected under FEHA, , Cal. Govt. Code § 12940 et. seq.**

**(By All Workers Except Gina, Recky, Ronnie and Rolando Against All Defendants)**

157. The Workers incorporate the foregoing paragraphs as if fully set forth here.

158. Cal Govt. Code § 12940 et seq. prohibits an employer from retaliating against an employee because the employee has opposed any practices forbidden under FEHA or has filed a complaint, testified, or assisted in any proceeding related to FEHA.

159. The Workers complained to the Almeidas about being treated differently from non-Filipino employees with regards to overtime and holidays.

160. Defendants took retaliatory adverse employment actions against Louise, Ermita, Fernando, Romar, and Elmer by issuing them write-ups and by terminating their employment in January 2015 for stated reasons that were pretextual, against Armie by denying her a raise granted to the other managers, against Wilfredo by issuing him a write-up, and against Louise by threatening to send her back to the Philippines.

161. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages, mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees. Moreover, Defendants' conduct was willful, exploitative and malicious, and punitive damages are warranted.

**EIGHTH CAUSE OF ACTION**

**For Racial, Ethnic and Ancestry Discrimination under 42 U.S.C. § 1981**

**(By All Workers Against All Defendants)**

162. The Workers incorporate the foregoing paragraphs as if fully set forth here.

163. 42 U.S.C. § 1981 prohibits intentional racial, ethnic and ancestry-based discrimination in the making and enforcement of contracts, including employment contracts.

164. The Workers were all of Filipino race, ethnicity and ancestry, and thus members of a protected class, and were all qualified for the jobs for which they were hired. However, the Workers were frequently paid less than minimum wage, compelled to work well in excess of

forty hours per week without overtime pay, forced to complete job duties outside of those stated in their employment contracts, not provided meal periods as required by law, and were forced to destroy or not keep timecards to hide evidence of their employer's violations. Other employees who were not of the Filipino race, ethnicity or ancestry did not suffer equivalent adverse actions. Defendants enacted the discriminatory scheme with purposeful intent to discriminate against the Filipino employees.

165. Through such actions, Defendants, acting individually and in concert, have violated § 1981. Defendants acted with malice and reckless indifference to the Workers' federally protected rights.

166. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages, mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees. Moreover, Defendants' conduct was willful, exploitative and malicious, and punitive damages are warranted.

**NINTH CAUSE OF ACTION**

**For Harassment on the Basis of Race, Ethnicity, and Ancestry under 42 U.S.C. § 1981**

**(By All Workers Except Gina Against All Defendants)**

167. The Workers incorporate the foregoing paragraphs as if fully set forth here.

168. 42 U.S.C. 1981 prohibits workplace harassment on the basis of race, ethnicity or ancestry, prohibiting unwelcome verbal and physical conduct of a racial nature.

169. Defendants violated § 1981 by harassing the Workers based on their Filipino race, ethnicity and ancestry. They consistently belittled, humiliated, and socially isolated the Workers, but did not subject non-Filipino employees to the same treatment. The Almeidas made derogatory statements about Filipinos to the Workers and in their presence, claiming that L'Amande French Bakery was "not a restaurant for Filipinos but for white people," and referring to the Filipinos workers as "pigs." Defendants also subjected the Workers to a restrictive language policy whereby they were not allowed to speak their native Tagalog despite the fact that most of the workers spoke little English. The Workers were offended by this conduct. The

treatment was sufficiently pervasive to alter the conditions of the Workers' employment and to interfere with their psychological well-being.

170. As a direct and proximate result of these actions, the Workers have sustained damages, including mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees. Moreover, Defendants acted with malice and reckless indifference to the Workers' federally protected rights, and punitive damages are warranted.

**TENTH CAUSE OF ACTION**

**For Retaliation for Activities Protected under 42 U.S.C. § 1981**

**(By All Workers Except Gina, Recky, Ronnie, and Rolando Against All Defendants)**

171. The Workers incorporate the foregoing paragraphs as if fully set forth here.

172. 42 U.S.C. § 1981 prohibits retaliation by an employer against an employee for complaining to the employer about workplace discrimination prohibited by § 1981.

173. The Workers complained to the Almeidas about being treated differently from non-Filipino employees with regards to overtime and holidays.

174. Defendants took retaliatory adverse employment actions against Louise, Ermita, Fernando, Romar, and Elmer by issuing them write-ups and terminating their employment in January 2015 for stated reasons that were pretextual, against Armie by denying her a raise granted to the other managers, against Wilfredo by issuing him a write-up and against Louise by threatening to send her back to the Philippines

175. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages, mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees. Moreover, Defendants acted with malice and reckless indifference to the Workers' federally protected rights, and punitive damages are warranted.

## ELEVENTH CAUSE OF ACTION

**For Failure to Pay Minimum Wage Under California Labor Code Sections 1194, 1194.2 and 1197 and IWC Wage Order No. 5**

**(By All Workers Against All Defendants)**

176. The Workers incorporate the foregoing paragraphs as if fully set forth here.

177. California Labor Code § 1197 establishes the right of employees to be paid minimum wages for their work, in amounts set by state law. Prior to 2013, § 1182.12 provided that the minimum wage in California was eight dollars per hour. In 2013, § 1182.12 was amended to provide that, effective July 1, 2014, the minimum wage be raised to nine dollars per hour.

178. Labor Code §§ 1194(a) and 1194.2(a) provide that an employee who has not been paid the legal minimum wage may recover the unpaid balance together with attorneys' fees and costs of suit as well as liquidated damages in an amount equal to the minimum wages unpaid and interest on those amounts.

179. From September 2009 until August 2012, the Almeidas employed Gina, paying her significantly less than the minimum wage for the hours that she worked.

180. From September 2011 until at least May 2014, Defendants paid each of the Workers significantly less than the minimum wage for the hours they worked.

181. Under California's wage and hour laws, both the entity that officially employs a worker and any party that controls the employment relationship ( including the owner of a business that directly or indirectly employs or exercises control over the wages, hours, or working conditions of a worker) is considered an "employer."

182. The Almeidas were the owner-operators of the restaurants and exercised personal control over the wages and hours of the Workers.

183. Defendants were aware of, or should have been aware of, the requirement to pay the Workers the statutorily defined minimum wage for their labor and their failure to pay the minimum wage was willful.

184. As a direct and proximate result of these actions, the Workers have sustained

damages, including lost wages, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees, and all appropriate penalties provided by the Labor Code, including liquidated damages.

**TWELFTH CAUSE OF ACTION**

**For Failure to Pay Overtime Wages Under California Labor Code Sections 510(a), 1194 and 1198 and IWC Wage Order Nos. 5 and 15**

**(By All Workers Against All Defendants)**

185. California Labor Code § 510(a) entitles employees generally, and IWC Wage Order No. 5 entitle restaurant, cafeteria and other "public-housekeeping" employees, to one-and-a-half times their regular wage rate for hours worked in excess of eight hours per day (or forty hours per week) and twice their regular rate for hours worked in excess of twelve hours per day or in excess of eight hours per day on the seventh day of a workweek.

186. Labor Code § 1198 and IWC Wage Order No. 15 provide for overtime payments to domestic service "live-in" employees in California who are not "personal attendants." Employees, like Gina, who spend more than 20% of their time engaged in activities other than taking care of a child or person requiring supervision, are not personal attendants. IWC Wage Order No. 15 provides that such workers shall not be employed more than nine hours in any workday for the first five workdays in a work week unless they receive additional compensation beyond their regular wages in amounts specified by law. Such an employee is entitled to overtime pay at a rate of one and one-half times her regular rate for all hours worked in excess of nine during the first five workdays. For the first nine hours worked on the sixth and seventh days of the work week, the employee is entitled to be paid one and one-half times her regular rate. For the remaining hours worked on the sixth and seventh days, the employee is entitled to be paid at double her regular rate.

187. Labor Code §§ 1194(a) provides that an employee who has not been paid the legal overtime pay may recover from his employer the unpaid balance together with attorneys' fees, costs of suit and interest on those amounts.

188. From September 2011 until at least May 2014, Defendants failed to pay the

Workers the significant overtime wages they were entitled to under Labor Code § 510(a) and IWC Wage Order No. 5.

189. From September 2009 until August 2012, the entire term of Gina's employment with the Almeidas, the Almeidas failed to pay Gina overtime wages she was entitled to under Labor Code § 1198 and IWC Wage Order Nos. 5 and 15

190. Under California's wage and hour laws, both the entity that officially employs a worker and any party that controls the employment relationship ( including the owner of a business that directly or indirectly employs or exercises control over the wages, hours, or working conditions of a worker) is considered an "employer."

191. The Almeidas were the owner-operators of the restaurants and exercised personal control over the wages and hours of the Workers.

192. Defendants were aware of, or should have been aware of, the requirement to pay the Workers the statutorily defined minimum wage for their labor and their failure to pay the minimum wage was willful.

193. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees, and all appropriate penalties provided by the Labor Code.

**THIRTEENTH CAUSE OF ACTION**

**For Failure to Pay Minimum Wage Under the Fair Labor Standards Act, 29 U.S.C. § 206(a)(1) and § 206(f))**

**(By All Workers Against All Defendants)**

194. The Workers incorporate the foregoing paragraphs as if fully set forth here.

195. 29 U.S.C. § 206(a) and § 206(f), sections of the Fair Labor Standard Act ("FLSA"), establish a Federal minimum wage of $7.25 per hour for all relevant periods, including for workers in domestic service, such as Gina. 29 U.S.C. § 218 provides that an employer is required to pay the greater of the applicable state or federal minimum wage. Prior to 2013, California Labor Code § 1182.12 provided that the minimum wage in California was eight dollars per hour. In 2013, § 1182.12 was amended to provide that, effective July 1, 2014, the

minimum wage be raised to nine dollars per hour. Thus Defendants were at all times required to pay the Workers the applicable California minimum wage.

196. 29 U.S.C. § 216(b) provides that an employer who fails to pay employees the minimum wages or overtime required under the FLSA, is liable to such employees for their unpaid minimum wages or overtime, plus an additional equal amount in liquidated damages.

197. Defendants employed the Workers and the Almeidas employed Gina within the meaning of FLSA. For FLSA purposes, a corporate officer with operational control of a corporation's enterprise, as well as any individual with ultimate day-to-day control operations of a business or directing such business's employment practices, is an employer along with the corporation, and is jointly and severally liable under the FLSA for unpaid wages.

198. On information and belief, Goncalo was, at all relevant times, president of French Concepts and French Concepts BH, and Ana was also in day-to-day control of the business and directed its employment practices.

199. From September 2011 until at least May 2014, Defendants paid each of the Workers significantly less than the greater of the state or federal minimum wage for the hours they worked.

200. From September 2009 until August 2012, the Almeidas paid Gina significantly less than the greater of the state or federal minimum wage minimum wage for the hours that she worked.

201. Defendants were aware of, or should have been aware of, the requirement to pay the Workers the statutorily defined minimum wage for their labor and their failure to pay the minimum wage was willful.

202. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages, entitling them to recover their unpaid wages, an additional equal amount in liquidated damages, and costs and reasonable attorney's fees in amounts to be proven at trial, and such further relief as the court deems proper.

**FOURTEENTH CAUSE OF ACTION**

**For Failure to Pay Overtime Under the Fair Labor Standards Act, 29 U.S.C. § 207(a)**

**(By All Workers Against All Defendants)**

203. 29 U.S.C. § 207(a) requires an employer to pay workers at a rate not less than one and one-half times the higher of their regular rate and the statutory minimum wage for all hours worked in excess of forty hours per week.

204. 29 U.S.C. § 216(b) provides that an employer who fails to pay employees the minimum wages or overtime required under the FLSA, is liable to such employees for their unpaid minimum wages or overtime, plus an additional equal amount in liquidated damages.

205. From September 2011 until at least May 2014, Defendants failed to pay the Workers the significant overtime wages they were entitled to under Labor Code 29 U.S.C. § 207(a).

206. Defendants were aware of, or should have been aware of, the requirement to pay the Workers the statutorily required overtime pay for their labor and their failure to make such payments was willful.

207. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages, entitling them to recover their unpaid overtime, an additional equal amount in liquidated damages, and costs and reasonable attorney's fees in amounts to be proven at trial, and such further relief as the court deems proper.

**FIFTEENTH CAUSE OF ACTION**

**For Failure to Provide Meal and Rest Periods Under California Labor Code § 226.7**

**(By All Workers Against All Defendants)**

208. The Workers incorporate the foregoing paragraphs as if fully set forth here.

209. California Labor Code § 226.7 and applicable IWC Wage Orders require employers to permit their employees to take specified, paid rest breaks and unpaid meal periods. § 226.7 imposes statutory damages on employers who violate these provisions. Courts have recognized the right of employees to sue their employer in state court for violations of § 226.7, characterizing § 226.7 claims as a kind of wage claims.

210. Defendants routinely and repeatedly failed to provide the Workers with all legally required meal and rest periods, all in violation of Labor Code section 226.7 and applicable IWC Wage Orders.

211. Due to Defendant's unlawful failure to provide the Workers with the meal and rest periods to which they were entitled by law, Defendants are liable to the Workers for statutory damages as provided by the Labor Code and the IWC Wage Orders.

## SIXTEENTH CAUSE OF ACTION

**For Failure to Provide Accurate, Itemized Wage Stubs under California Labor Code § 226**

**(By All Workers Against All Defendants)**

212. The Workers incorporate the foregoing paragraphs as if fully set forth here.

213. Under California Labor Code § 226, for each pay period, employers must furnish each employee with an accurate itemized statement reflecting employment information including gross wages earned, total hours worked, and itemized deductions. Employers must record wage deductions in ink and keep these records on file for at least three years.

214. Defendants knowingly and intentionally failed to provide the Workers with accurate itemized statements in the form and manner specified by Labor Code § 226.

215. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages. In addition, under Labor Code § 226(e), the Workers are each entitled to recover $50 for the first violation and $100 for each subsequent violation, not to exceed $4,000. Under Labor Code § 226(e), the Workers are also each entitled to recover costs and reasonable attorney's fees.

## SEVENTEENTH CAUSE OF ACTION

**For Retaliation for Protected Activity under the California Labor Code § 1102.5 Whistleblower Provision**

**(By All Workers, Except Gina, Against All Defendants)**

216. The Workers incorporate the foregoing paragraphs as if fully set forth here.

217. California Labor Code § 1102.5 prohibits adverse employment actions in response to protected activity. It is protected activity under § 1102.5 whenever an employee

discloses (or an employer believes that the employee disclosed or may disclose) information that the employee has reasonable cause to believe reveals a violation of any state or federal statute, rule, or regulation. It is also protected activity when an employee refuses to participate in an activity that would result in a violation of state or federal statute, or a violation of, or noncompliance with, a local, state, or federal rule or regulation.

218. The Workers disclosed, and Defendants believed that the Workers had, or would, disclose information regarding Defendants' willful violations of the law, including, for example, their failure to pay minimum wages and overtime or to provide required rest breaks to the DLSE. The Workers also refused to participate in Defendants' attempt to violate state law by obstructing the DLSE investigation. In direct response to such protected activity, Defendants threatened to cancel the Workers' visas and send them back to the Philippines, constituting a threat of discharge. Defendants took retaliatory adverse employment actions against Louise, Ermita, Fernando, Romar, and Elmer by issuing them write-ups, and by terminating their employment in January 2015 for stated reasons that were pretextual. Defendants took retaliatory adverse employment actions against Wilfredo, Recky, and Ronnie by issuing them write-ups in the months following their testimony at the DLSE hearing.

219. As a direct and proximate result of these actions, the Workers have sustained damages, including mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial, reasonable attorney's fees and a civil penalty of $10,000 per violation.

**EIGHTEENTH CAUSE OF ACTION**

**For Retaliation for Protected Activity under the California Labor Code § 98.6 Retaliation Provision**

**(By All Workers Except Gina Against All Defendants)**

220. The Workers incorporate the foregoing paragraphs as if fully set forth here.

221. California Labor Code § 98.6 prohibits retaliation, discrimination and adverse actions in response to certain protected conduct. It is protected conduct under § 98.6 if any employee institutes, or causes to be instituted, any proceeding under, or relating to, his or her

rights under the jurisdiction of the labor commissioner, complains that he or she is owed unpaid wages, or exercises any rights afforded him or her by the Labor Code. Prohibited responses under § 98.6 include discharge, threat of discharge, retaliation, adverse actions, or any other manner of discrimination in the terms and conditions of employment.

222. Under Labor Code § 98.6(b)(1), plaintiffs are entitled to recovery in the form of reimbursement for lost wages and work benefits caused by those acts of the employer. In addition, an employer that violates this provision is liable for a civil penalty not to exceed $10,000 per employee for each violation.

223. The Workers engaged in rights protected by the Labor Code, including § 1102.5(a), for disclosing information to the DLSE regarding Defendants' Labor Code violations and assisting in the DLSE' s investigation. The Workers also filed individual complaints with the DLSE. In direct response to such protected activity, Defendants threatened to cancel the Workers' visas and send them back to the Philippines, constituting a threat of discharge.

224. Defendants took retaliatory adverse employment actions against Louise, Ermita, Fernando, Romar, and Elmer by issuing them write-ups and by, in January 2015 ,terminating their employment for stated reasons that were pretextual, against Armie by denying her a raise granted to the other managers, and against Wilfredo, Recky, and Ronnie by issuing them write-ups.

225. As a direct and proximate result of these actions, the Workers have sustained damages, including mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial, reasonable attorney's fees and a civil penalty of $10,000 per violation.

## NINETEENTH CAUSE OF ACTION

**For Wrongful Discharge in Violation of Public Policy**

**(By Louise, Ermita, Fernando, Elmer, and Romar Against All Defendants)**

226. The Workers incorporate the foregoing paragraphs as if fully set forth here.

227. Louise, Fernando, Ermita, Elmer, and Romar engaged in conduct protected by a

public policy that is fundamental and beneficial for the public when they appeared as witnesses or testified truthfully in a DLSE hearing during the DLSE investigation into Defendants' wage and hour violations against the Workers. Louise, Fernando, and Ermita also engaged in protected conduct when they exercised their rights under the California Labor Code by filing a complaint with the DLSE for recovery of unpaid wages and overtime compensation from French Concepts and French Concepts BH, and when they exercised their rights under FEHA to complain about disparate treatment on account of their race and national origin.

228. On information and belief, Defendants thereafter willfully and maliciously discharged Louise, Fernando, Ermita, Elmer, and Romar due to their continued cooperation with the DLSE and their filing of individual DLSE wage claims.

229. As a direct and proximate result of these actions, the Workers have sustained damages, including mental suffering, humiliation and emotional distress, entitling them to compensatory and punitive damages in an amount to be proven at trial and reasonable attorney's fees.

## TWENTIETH CAUSE OF ACTION

**For Unfair Immigration-Related Practices under California Labor Code § 1019**

**(By All Workers Except Gina Against All Defendants)**

230. The Workers incorporate the foregoing paragraphs as if fully set forth here.

231. California Labor Code § 1019 prohibits an employer from engaging in unfair immigration-related practices in response to protected conduct. Protected conducts includes filing a complaint, or informing any person of an employer's or other party's alleged violation of the labor code. Unfair immigration-related practices include threatening to contact or contacting immigration authorities.

232. § 1019 provides a private right of action for equitable relief, damages or penalties, and attorney's fees.

233. The Workers engaged in rights protected by the Labor Code, including § 1102.5(a), by, for example, disclosing information to the DLSE regarding Defendants' Labor

Code violations and assisting in the DLSE' s investigation. The Workers also filed individual complaints with the DLSE. Within 90 days of filing these complaints, in direct response to such protected activity, Defendants threatened to cancel the Workers' visas and send them back to the Philippines. On information and belief, Defendants threatened to contact immigration authorities by threatening to cancel the visas. In so doing, with the express purpose of retaliating against the Workers, Defendants engaged in unfair immigration-related practices.

234. After terminating Louise, Ermita, Fernando, Elmer, and Romar, Defendants, threatened to call immigration authorities and report them. These acts were in direct response to the Workers' cooperation with the DLSE.

235. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages, mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial and reasonable attorney's fees.

## TWENTY-FIRST CAUSE OF ACTION

### For Solicitation of Employee Through Misrepresentation Under California Labor Code Sections 970 and 972

### (By Ermita, Louise, Wilfredo and Fernando Against All Defendants)

236. The Workers incorporate the foregoing paragraphs as if fully set forth here.

237. California Labor Code § 970 prohibits any person from influencing, persuading, or engaging any person to change from one place to another in the state for the purpose of working in any branch of labor, by means of knowingly false representations, concerning the compensation to be paid for such work.

238. California Labor Code § 972 provides a private right of action for victims of violations of § 970 and allows for double damages—including emotional damages—resulting from such misrepresentations.

239. Defendants influenced and persuaded Ermita, Louise, and Fernand to relocate from Torrance, California to Beverly Hills California, by promising $500 in additional monthly compensation to each of these Workers if they completed such move. None of these Workers

ever received this promised increased compensation. On information and belief, Defendants acted fraudulently and with malice in falsely promising the Workers such compensation and then failing to ever pay it.

240. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages, mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial equal to twice the amount of the actual damages due to such misrepresentations plus punitive damages.

**TWENTY-SECOND CAUSE OF ACTION**

**For Waiting Time Penalties Under California Labor Code Section 203**

**(By Gina, Louise, Ermita, Fernando, Romar, and Elmer Against All Defendants)**

241. The Workers incorporate the foregoing paragraphs as if fully set forth here.

242. California Labor Code § 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the date of the termination of employment until the wages are paid, for up to thirty days.

243. From the time of Gina's arrival in September 2009, until at least August 2012, Defendants refused and failed to pay Plaintiffs the minimum wages and overtime compensation required by law as set forth in the Labor Code and in the applicable IWC Wage Orders. From the time of the first Workers arrival until at least May 2014, Defendants refused and failed to provide Plaintiffs with statutory compensation for missed meal and rest periods as required by the Labor Code and the applicable IWC Wage Orders.

244. Defendants did not pay Plaintiffs all wages owed to them at the time their employment was terminated, thereby entitling Plaintiffs to recover waiting time penalties equal to thirty days' pay pursuant to Labor Code section 203.

245. By virtue of Defendants' unlawful failure and refusal to pay to Plaintiffs wages when due as required by law, Defendants are liable to Plaintiffs in amounts to be proven at trial, and Plaintiffs are entitled to all appropriate penalties provided by the Labor Code and the relevant IWC Wage Orders.

**TWENTY-THIRD CAUSE OF ACTION**

**For Intentional Infliction of Emotional Distress**

**(By All Workers Except Gina and Rolando Against All Defendants)**

246. The Workers incorporate the foregoing paragraphs as if fully set forth here.

247. Defendants engaged in outrageous conduct towards the Workers, with the intention of causing, or with reckless disregard for the probability of causing, the Workers to suffer severe emotional distress. To the extent that such outrageous conduct was perpetrated by certain Defendants, the remaining Defendants adopted and ratified the conduct with a wanton and reckless disregard of the deleterious consequences to the Workers. This outrageous conduct far exceeded the risks inherent in a normal employment relationship, and included the use of threats, intimidation, fraud, deceit or coercion to overbear Workers' will, to make them travel from their homes overseas, to deprive them of personal liberty, and to force them to work for below minimum wage. For example, certain of the Workers lived in substandard conditions, sleeping three in a laundry room between three people for over three months. Defendants conduct constitutes a violation of the fundamental public policy of this state, including as set forth in California Civil Code section 52.5.

248. As a direct and proximate result of these actions, the Workers have sustained damages, including lost wages, mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial. Defendants committed these acts maliciously, fraudulently, and oppressively, with the wrongful intention of injuring the Workers, from an improper and evil motive amounting to malice, and in conscious disregard of the Workers' rights. The Workers are thus entitled to recover punitive damages from Defendants in an amount to be proven at trial.

**TWENTY-FOURTH CAUSE OF ACTION**

**For Negligence**

**(By All Workers Except Gina Against All Defendants)**

249. The Workers incorporate the foregoing paragraphs as if fully set forth here.

250. Defendants stood in a special relationship to the Workers, based on the facts

alleged in this Complaint, including but not limited to the following: Defendants contracted with each of the Workers for their employment in their bakeries; Defendants or their agents arranged and paid for the Workers travel to the United States; Defendants procured the Workers' presence in the United States on fraudulent pretenses; Ermita, Louise, and Fernando lived in the Almeida's home at their invitation and insistence; the Almeida's knew the Workers spoke little English (and that most some spoke no English at all) and had no familiarity with the customs, culture, society or laws of the United States at the time they brought them from the Philippines, and Defendants, on information and belief, knew at the time they brought Workers to the United States that they had no money for return airfare and no other means of earning money in the United States.

251. The California Labor Code imposes duties on employers, including the duty to allow an employee one day's rest in seven under Labor Code §§ 551 and 552, and "[t]o do every other thing reasonably necessary to protect the life, safety, and health of employees."

252. By virtue of the relationship described above and Defendants' position as the Workers employers, Defendants' duty of reasonable care toward the Workers under the circumstances included but was not limited to: (1) a duty to provide reasonable accommodations and a safe working and living environment; (2) a duty of reasonable care under the circumstances to protect the Workers' emotional state; (3) a duty to allow the Workers one day in seven to rest from their work; and ( 4) a duty to ensure the Workers were informed of their rights as employees under the laws of the United States and the State of California. On the basis of the facts alleged in this Complaint, Defendants assumed a duty of care to the Workers beyond that owed to the public in general, including but not limited to the duties listed above.

253. Defendants breached these duties owed the Workers by the acts and omissions alleged in this Complaint, including but not limited to subjecting Plaintiffs to threats and abuse and the failure to allow the Workers one day's rest in seven.

254. As a direct and proximate result of these actions, the Workers have sustained damages, including serious and severe mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial.

**TWENTY-FIFTH CAUSE OF ACTION**

**For Negligence Per Se**

**(By All Workers Except Gina Against All Defendants)**

255. The Workers incorporate the foregoing paragraphs as if fully set forth here.

256. The services provided by the Workers to Defendants were performed under conditions that violated the FLSA, 48 U.S.C. § 1981, 18 U.S.C. § 1589 et. seq., California Civil Code § 52.5 and provisions of the California Labor Code and the IWC Wage Orders as alleged in this Complaint. Defendants knew, or reasonably should have known, of these and ongoing violations, yet did and have done nothing to alleviate, investigate, remedy, or report the violations to appropriate authorities. The anti-trafficking provisions of 18 U.S.C. 1589 and California Civil Code § 52.5; the minimum wage and overtime guarantees of the FLSA, the California Labor Code, and applicable IWC Wage Orders; and other provisions of state and federal law violated by Defendants, were enacted to protect workers from economic and personal injuries caused by forced labor, poverty-level wages, unduly long working hours, discrimination and other substandard working conditions. The acts and omissions of Defendants as alleged in this Complaint were and are a substantial factor contributing to the illegal working conditions under which the Workers labored.

257. The Workers are among the class of persons that the statutes and regulations referenced above were designed to protect, and for whose protection they were adopted. The Workers' injuries are of the type that the foregoing statutes and regulations are intended to prevent. Defendants' violations of the foregoing statutes and regulations constituted negligence per se, and created a presumption of negligence.

258. As a direct and proximate result of these actions, the Workers have sustained damages, including mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial. This conduct was malicious, fraudulent, and oppressive, and was done with a conscious disregard for Workers rights, and for the deleterious consequences of Defendants' actions. Each defendant authorized, condoned, and/or ratified the unlawful conduct of all the other defendants named in this action and of their agents and

employees. Consequently, the Workers are entitled to an award of punitive damages.

**TWENTY-SIXTH CAUSE OF ACTION**

**For Fraud and Negligent Misrepresentation**

**(By All Workers Against All Defendants)**

259. The Workers incorporate the foregoing paragraphs as if fully set forth here.

260. Defendants, directly or through their agents, knowingly and negligently, made misrepresentations of, and failed to disclose, material facts regarding the Workers employment. These included, but were not limited to misrepresentations of, and omissions regarding, the nature of the work required, and of the amount of money they would be paid.

261. In the spring of 2009, Ana met with Gina in Manila. Ana told Gina that if she joined the Almeidas in the United States, she would work only as a nanny caring for Ana's child, Lorenzo.

262. During February and on March 30, 2011, Ana met with Ermita, Fernando and Louise at Ana's mother's house in Valle Verde, Manila. Ana told them she was opening a new bakery in the U.S. and if they worked for her she would pay each of them $2,000 USD per month. She also told them she would raise their salaries once the bakery had become successful. Ana represented that Ermita, Fernando and Louise's skills in the kitchen and management experience would be needed at the bakery. Finally, Ana promised to pay for all airfare and visa expenses necessary for relocating to the U.S.

263. On July 15, 2012, Ana met with Armelinda, Romar, Recky, Ronnie, Wilfredo, and Rolando in the Philippines. Ana told Armelinda that Defendants would pay her $2,000 USD per month to work in a managerial role, with a guaranteed performance review after six months that could lead to a raise. Ana told the other Workers that Defendants would pay them each $1,000 USD per month for the first six months and then $2,000 USD per month after that to work as bakers or as kitchen staff handling other food preparation. Defendants would pay all the Workers tips after six months.

264. When Defendants made these representations, they knew they were false, or made the representations recklessly with no regard for their truth, or had no reasonable grounds for

thinking that the representations were true. Defendants made the representations with the intent to defraud and induce Plaintiffs to come to the United States. At the time Plaintiffs acted, Plaintiffs did not know that the representations were false and believed them to be true. Plaintiffs considered the representations material and reasonably and substantially relied upon the representations to leave their homes in the Philippines to work for Defendants.

265. Defendants had, and continue to have, both access to and actual possession of superior knowledge and special information with regard to facts relevant to a determination of Plaintiffs' rights as employees in California. This superior knowledge and information includes but is not limited to knowledge of legal requirements for employers and amounts established by California law as the minimum wage. As a result of Defendants' access to superior knowledge and their actual possession of such knowledge, Defendants gained an unconscionable advantage and exerted undue influence over Plaintiffs, who were ignorant of facts relevant to their employment status and rights and who were not in a position to become informed of such facts.

266. Despite their superior knowledge and information, Defendants intentionally concealed from Plaintiffs that they were entitled to minimum wage, overtime compensation, and other legal protections and benefits available to employees under California law, and in misled them to believe the opposite. Defendants actively and intentionally concealed these known, material facts with the intent to induce Plaintiffs to accept their underpaid status, and for the purpose of preventing Plaintiffs from asserting their rights in any legal forum available to them. Between February and July 2014, Defendants affirmatively and falsely represented to the Workers that they were exempt employees, not entitled to the protection of the minimum wage laws. Because of Defendants' superior access to relevant knowledge and information about Plaintiffs' employment status and rights, Plaintiffs justifiably relied upon Defendants' omissions, obfuscations and false representations to their detriment.

267. As a direct and proximate result of these actions, the Workers have sustained damages, including wages and other benefits in amounts to be proven at trial, mental suffering, humiliation and emotional distress, entitling them to damages in an amount to be proven at trial. Further, Defendants' conduct was malicious, fraudulent, despicable, and oppressive in that

Defendants acted with full knowledge of the consequences to Plaintiffs, with the intent to violate the statutory and other rights of Plaintiffs, or with a willful, conscious, wanton and reckless disregard for Workers' rights and for the deleterious consequences and cruel and unjust hardship resulting to Workers. Consequently, Workers are entitled to exemplary and punitive damages from Defendants in an amount to be proven at trial.

**TWENTY-SEVENTH CAUSE OF ACTION**

**For Unfair Competition under California Business & Professions Code § 17203**

**(By All Workers Against All Defendants)**

268. The Workers incorporate the foregoing paragraphs as if fully set forth here.

269. The California Unfair Competition Law, in Cal. Bus. & Prof. Code § 17203, permits a court to provide injunctive relief to restore to a plaintiff any interest in money or property which may have been acquired by means of unfair competition. Cal. Bus. & Prof. Code § 17200 defines "unfair competition" to include any unlawful, unfair, or fraudulent, business act or practice. An individual has standing to bring a claim under the UCL if he or she has suffered injury in fact, and has lost money or property as a result of the unfair competition.

270. Defendants engaged in unlawful business acts or practices, including those set forth in the preceding paragraphs of the Complaint. Defendants, in operating their business, engaged in systematic violations of state and federal minimum wage and overtime laws; California Labor Code and Fair Labor Standards Act anti-retaliation provisions; violations of anti-discrimination and retaliation laws; state and federal forced labor and human trafficking laws and the federal "Racketeer Influenced and Corrupt Organizations Act," each of which caused injury and the loss of money or property to the Workers.

271. Defendants' unlawful business practices also included violations of California Labor Code § 970. § 970 prohibits any person from influencing, persuading, or engaging any person to change from any place outside California to any place inside California for the purpose of working in any branch of labor, by means of knowingly false representations, concerning the character of, compensation for, or housing conditions related to such work.

272. Defendants, made representations to Gina in the spring of 2009, to Ermita,

Fernando and Louise in February and March 2011, and to Armelinda, Romar, Recky, Ronnie, Wilfredo, Elmer and Rolando on July 15, 2012, regarding their employment in America, which such Defendants knew to be false. They told Gina that she would work only as a nanny, and told the other Workers that they would work in skilled positions, promised a certain level of pay and omitted key details about the relative value of the promised wages in the United States. By means of such representations, Defendants influenced, persuaded, and ultimately engaged the plaintiffs to leave their homes and families in the Philippines and to relocate to California.

273. Defendants' unlawful business practices also included violations of California Labor Code § 223. § 223 prohibits an employer from secretly paying one wage, while purporting to pay a higher wage. Defendants falsified pay stubs and accounting records to indicate that the Workers worked dramatically fewer hours than they in fact worked.

274. Defendants fraudulent and unfair business practices are detailed above.

275. The Workers seek full restitution and other appropriate injunctive relief from Defendants, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein.

**JURY TRIAL DEMAND**

The Workers request a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

The Workers respectfully request that this Court enter judgment on their claims for relief as follows:

1. Unpaid minimum and overtime wages, penalties and interest; liquidated damages; double damages; waiting time penalties; and wages in compensation for missed rest periods, under the applicable sections of the California Labor Code and of 29 U.S.C. Chapter 8, the Fair Labor Standards Act, in an amount in excess of one million dollars, according to proof at trial;
2. For general, compensatory, and special damages according to proof at trial;
3. Exemplary and punitive damages according to proof at trial;

4. Statutory damages, liquidated damages, treble damages, penalties, and all other forms of monetary relief recoverable under applicable law;

5. Pre-judgment and post-judgment interest;

6. Preliminary and permanent injunctive relief;

7. Appropriate restitution;

8. Reasonable costs and attorney's fees, and expenses incurred and expended to date, according to proof at trial, to the extent allowable by applicable law; and

9. Such other and further relief as the Court deems just and proper.

Dated: March 18, 2015

By: ______________________
Michael G. Romey
Attorney for Plaintiffs
LATHAM & WATKINS LLP

62

LATHAM & WATKINS LLP ATTORNEYS AT LAW LOS ANGELES LA\4043541.5 COMPLAINT

Exhibit A - Page 068

EXHIBIT A

# Right to Sue Notices Received by Workers and FEHA Charges

Exhibit A - 63

Exhibit A - Page 070

# Armelinda Dela Cerna

Exhibit A - 64

Exhibit A - Page 071

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

January 22, 2015

Sid Nadkarni
Latham And Watkins LLP, 355 South Grand Ave.
Los Angeles California 90071

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 463571-140538-R
Right to Sue: Dela Cerna / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complaintant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

January 22, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 463571-140538-R
Right to Sue: Dela Cerna / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

January 22, 2015

Armelinda Dela Cerna
2335 Pacific Coast Highway, Apt # 2
Lomita California 90717

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 463571-140538-R
Right to Sue: Dela Cerna / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Armelinda Dela Cerna,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 22, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

Enclosures

cc: French Concepts BH, D/b/a L`Amande French Bakery

Ana Moitinho De Almeida

Goncalo Moitinho De Almeida

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Armelinda Dela Cerna, Complainant.

DFEH No. 463571-140538-R

vs.

French Concepts, Inc., D/b/a L`Amande French
Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 21, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a work environment free of discrimination and/or retaliation, Other, On information and belief, respondents denied Ms. Dela Cerna minimum wage, overtime pay, tips, proper meal breaks, and other wage and hour protections in violation of FEHA. Respondents also prevented Ms. Dela Cerna from speaking her native Tagalog language in the workplace, with no business justification, in violation of FEHA.** Complainant believes respondent committed these actions because of their: **National Origin - including language use restrictions** .

3. Complainant **Armelinda Dela Cerna** resides in the City of **Lomita**, State of **California**. If complaint includes co-respondents please see below.

Date Filed: January 22, 2015

Date Amended: January 22, 2015



**Co-Respondents:**

French Concepts BH, D/b/a L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90274

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

DFEH 902-1

-6-

*Complaint – DFEH No. 463571-140538-R*

Date Filed: January 22, 2015

Date Amended: January 22, 2015

Exhibit A - 70

**Exhibit A - Page 077**

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Ms. Dela Cerna by subjecting her to disparate treatment on the basis of her Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying her minimum wage, proper meal breaks, tips, overtime pay and other wage and hour protections to which she was entitled from the beginning of her employment in May 2013 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way. From the beginning of her employment for respondents in May 2013 and continuously through the present, Ms. Dela Cerna suffered ongoing harassment by her employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on her Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included, for example, continuous verbal abuse, restrictions on communication with non-Filipino coworkers, and prohibition from speaking his native Tagalog language. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment, and had a disparate impact on Filipino workers like Ms. Dela Cerna.Since the beginning of Ms. Dela Cernas employment for respondents in May 2013 continuously through the present, respondents prevented Ms. Dela Cerna and her Filipino coworkers from speaking Tagalog in the workplace in violation of Cal. Govt. Code Section 12951. Respondents had no business necessity for the restriction on Tagalog, did not provide the requisite notice of the restriction, and did not prevent similarly situated non-Filipino employees from speaking their native, non-English languages in the workplace. After Ms. Dela Cerna received a DLSE questionnaire in March 2014 asking to document wage and hour violations that would have revealed wage discrimination and differential treatment, respondents retaliated against Ms. Dela Cerna in violation of Cal. Govt. Code Section 12940 et seq. by threatening that she would lose her job unless she lied to DLSE investigators to cover up evidence of wage discrimination.As a result, Ms. Dela Cerna seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

Date Filed: January 22, 2015

Date Amended: January 22, 2015

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 22, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

Date Filed: January 22, 2015

Date Amended: January 22, 2015

Elmer Genito

Exhibit A - 73

Exhibit A - Page 080

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

January 22, 2015

Sid Nadkarni
Latham And Watkins LLP, 355 South Grand Ave.
Los Angeles California 90071

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 448292-140464
Right to Sue: Genito / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complaintant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 448292-140464
Right to Sue: Genito / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

Elmer Genito
2335 Pacific Coast Highway, Apt. # 2
Lomita California 90717

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 448292-140464
Right to Sue: Genito / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Elmer Genito,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 22, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Enclosures

cc: Ana Moitinho De Almeida

Goncalo Moitinho De Almeida

French Concepts BH, D/b/a L`Amande French Bakery

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**

**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Elmer Genito, Complainant.

DFEH No. 448292-140464

vs.

French Concepts, Inc., D/b/a L`Amande French
Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 21, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a good faith interactive process, Other, On information and belief, respondents denied Mr. Genito minimum wage, overtime pay, tips, proper meal breaks, and other wage and hour protections in violation of FEHA. Respondents also prevented Mr. Genito from speaking his native Tagalog language in the workplace, with no business justification, in violation of FEHA.**. Complainant believes respondent committed these actions because of their: **National Origin - including language use restrictions** .

3. Complainant **Elmer Genito** resides in the City of **Lomita**, State of **California**. If complaint includes co-respondents please see below.

Date Filed: January 22, 2015

**Co-Respondents:**

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

French Concepts BH, D/b/a L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90274

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Mr. Genito by subjecting him to disparate treatment on the basis of his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying him minimum wage, proper meal breaks, tips, overtime pay and other wage and hour protections to which he was entitled from the beginning of his employment in September 2012 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way.From the beginning of his employment for respondents in September 2012 and continuously through the present, Mr. Genito suffered ongoing harassment by his employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included, for example, continuous verbal abuse, restrictions on communication with non-Filipino coworkers, and prohibition from speaking his native Tagalog language. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment, and had a disparate impact on Filipino workers like Mr. Genito. Since the beginning of Mr. Genitos employment for respondents in September 2012 continuously through the present, respondents prevented Mr. Genito and his Filipino coworkers from speaking Tagalog in the workplace in violation of Cal. Govt. Code Section 12951. Respondents had no business necessity for the restriction on Tagalog, did not provide the requisite notice of the restriction, and did not prevent similarly situated non-Filipino employees from speaking their native, non-English languages in the workplace. After Mr. Genito received a DLSE questionnaire in March 2014 asking to document wage and hour violations that would have revealed wage discrimination and differential treatment, respondents retaliated against Mr. Genito in violation of Cal. Govt. Code Section 12940 et seq. by threatening to fire him and deport him back to the Philippines unless he falsified his responses on the questionnaire to cover up evidence of wage discrimination. After Mr. Genito participated in a DLSE hearing in July 2014 concerning respondents denial of minimum wage, overtime and proper meal breaks, respondents retaliated by issuing him an adverse employment write-up. Before the DLSE hearing he never received a write-up of any kind. As a result, Mr. Genito seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 22, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

Ermita Alabado

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 23, 2015

Ermita Alabado
8570 W. Olympic Blvd
Los Angeles California 90035

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 448410-140534
Right to Sue: Alabado / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complaintant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

  STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 23, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 448410-140534
Right to Sue: Alabado / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

January 23, 2015

Ermita Alabado
8570 W. Olympic Blvd
Los Angeles California 90035

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 448410-140534
Right to Sue: Alabado / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Ermita Alabado,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 23, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

Enclosures

cc: Ana Moitinho De Almeida

Goncalo Moitinho De Almeida

French Concepts BH, D/b/a L`Amande French Bakery

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Ermita Alabado, Complainant.
8570 W. Olympic Blvd
Los Angeles California 90035

DFEH No. 448410-140534

vs.

French Concepts, Inc., D/b/a L`Amande French Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 22, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a work environment free of discrimination and/or retaliation, Terminated, Other, On information and belief, respondents denied Ms. Alabado minimum wage, overtime pay, proper meal breaks, and other wage and hour protections in violation of FEHA. Respondents also prevented Ms. Alabado from speaking her native Tagalog language in the workplace, with no business justification, in violation of FEHA**. Complainant believes respondent committed these actions because of their: **National Origin - including language use restrictions** .

3. Complainant **Ermita Alabado** resides in the City of **Los Angeles**, State of **California**. If complaint includes co-respondents please see below.

**Co-Respondents:**

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

French Concepts BH, D/b/a L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90274

DFEH 902-1

-6-

*Complaint – DFEH No. 448410-140534*

Date Filed: January 23, 2015

Exhibit A - 88

Exhibit A - Page 095

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Ms. Alabado by subjecting her to disparate treatment on the basis of her Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying her minimum wage, proper meal breaks, overtime pay and other wage and hour protections to which she was entitled from the beginning of her employment in September 2011 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way.From the beginning of her employment for respondents in September 2011 and continuously through the present, Ms. Alabado suffered ongoing harassment by her employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on her Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included, for example, continuous verbal abuse, restrictions on communication with non-Filipino coworkers, and prohibition from speaking his native Tagalog language. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment, and had a disparate impact on Filipino workers like Ms. Alabado. Since the opening of the first location of LAmande French Bakery in Torrance, CA in April 2012 through the present, respondents prevented Ms. Alabado and her Filipino coworkers from speaking Tagalog in the workplace in violation of Cal. Govt. Code Section 12951. Respondents had no business necessity for the restriction on Tagalog, did not provide the requisite notice of the restriction, and did not prevent similarly situated non-Filipino employees from speaking their native, non-English languages in the workplace. After Ms. Alabado received a DLSE questionnaire in March 2014 asking her to document wage and hour violations that would have revealed wage discrimination and other differential treatment , respondents retaliated against Ms. Alabado in violation of Cal. Govt. Code Section 12940 et seq. by saying that everyone would lose their job unless she falsified her responses on the questionnaire to cover up evidence of wage discrimination. Respondents also told Ms. Alabado that her mother and father would go after her in the Philippines if she did not lie at the DLSE hearing. Ms. Alabado testified truthfully at the DLSE hearing in July 2014. Respondents retaliated against Ms. Alabado by issuing her several adverse employment write-ups after the hearing. On January 22, 2015, respondents retaliated against Ms. Alabado by terminating her employment. As a result, Ms. Alabado seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 23, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

Fernando Belidhon

Exhibit A - 91

Exhibit A - Page 098

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 23, 2015

Fernando Belidhon
8570 W. Olympic Blvd
Los Angeles California 90035

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 447373-140454
Right to Sue: Belidhon / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complainant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 23, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 447373-140454
Right to Sue: Belidhon / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 23, 2015

Fernando Belidhon
8570 W. Olympic Blvd
Los Angeles California 90035

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 447373-140454
Right to Sue: Belidhon / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Fernando Belidhon,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 23, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Enclosures

cc: Ana Moitinho De Almeida

Goncalo Moitinho De Almeida

French Concepts BH, D/b/a L`Amande French Bakery

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Fernando Belidhon, Complainant.
8570 W. Olympic Blvd
Los Angeles California 90035

DFEH No. 447373-140454

vs.

French Concepts, Inc., D/b/a L`Amande French Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 22, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a work environment free of discrimination and/or retaliation, Terminated, Other, On information and belief, respondents denied Mr. Belidhon minimum wage, overtime pay, proper meal breaks, and other wage and hour protections in violation of FEHA. Respondents also prevented Mr. Belidhon from speaking his native Tagalog language in the workplace, with no business justification, in violation of FEHA**. Complainant believes respondent committed these actions because of their: **National Origin - including language use restrictions** .

3. Complainant **Fernando Belidhon** resides in the City of **Los Angeles**, State of **California**. If complaint includes co-respondents please see below.



**Co-Respondents:**

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

French Concepts BH, D/b/a L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90274

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Mr. Belidhon by subjecting him to disparate treatment on the basis of his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying him minimum wage, proper meal breaks, overtime pay and other wage and hour protections to which he was entitled from the beginning of his employment in September 2011 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way. From the beginning of his employment for respondents in September 2011 and continuously through the present, Mr. Belidhon suffered ongoing harassment by his employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included, for example, restrictions on communication with non-Filipino coworkers and prohibition from speaking his native Tagalog language. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment, and had a disparate impact on Filipino workers like Mr. Belidhon. Since the opening of the first location of LAmande French Bakery in Torrance, CA in April 2012 through the present, respondents have violated Cal. Govt. Code Section 12951 by preventing Mr. Belidhon and his Filipino coworkers from speaking Tagalog in the workplace. Respondents had no business necessity for the restriction on Tagalog, did not provide the requisite notice of the restriction, and did not prevent similarly situated non-Filipino employees from speaking their native, non-English languages in the workplace. After Mr. Belidhon received a DLSE questionnaire in March 2014 asking him to document wage and hour violations that would have revealed wage discrimination and differential treatment, respondents retaliated against Mr. Belidhon in violation of Cal. Govt. Code Section 12940 et seq. by threatening to fire him and deport him back to the Philippines unless he falsified his responses on the questionnaire or lie at the DLSE hearing about the wage and hour violations to cover up evidence of wage discrimination. On January 22, 2015, respondents retaliated against Mr. Belidhon by terminating his employment. As a result, Mr. Belidhon seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 23, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

Louise Luis

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

Sid Nadkarni
Latham And Watkins LLP, 355 South Grand Ave.
Los Angeles California 90071

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 448423-140535
Right to Sue: Luis / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complaintant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 448423-140535
Right to Sue: Luis / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

January 22, 2015

Louise Luis
8570 W. Olympic Blvd
Los Angeles California 90035

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 448423-140535
Right to Sue: Luis / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Louise Luis,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 22, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Enclosures

cc: Ana Moitinho De Almeida

Goncalo Moitinho De Almeida

French Concepts BH, D/b/a L`Amande French Bakery

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Louise Luis, Complainant.

DFEH No. 448423-140535

vs.

French Concepts, Inc., D/b/a L`Amande French
Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 21, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a work environment free of discrimination and/or retaliation, Terminated, Other, On information and belief, respondents denied Ms. Luis minimum wage, overtime pay, proper meal breaks, and other wage and hour protections in violation of FEHA. Respondents also prevented Ms. Luis from speaking her native Tagalog language in the workplace, with no business justification, in violation of FEHA.** Complainant believes respondent committed these actions because of their: **National Origin - including language use restrictions** .

3. Complainant **Louise Luis** resides in the City of **Los Angeles**, State of **California**. If complaint includes co-respondents please see below.



**Co-Respondents:**

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

French Concepts BH, D/b/a L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90274

DFEH 902-1

-6-

*Complaint – DFEH No. 448423-140535*

Date Filed: January 22, 2015

Exhibit A - 106

**Exhibit A - Page 113**

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Ms. Luis by subjecting her to disparate treatment on the basis of her Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying her minimum wage, proper meal breaks, overtime pay and other wage and hour protections to which she was entitled from the beginning of her employment in September 2011 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way. From the beginning of her employment for respondents in September 2011 and continuously through the present, Ms. Luis suffered ongoing harassment by her employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on her Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included, for example, continuous verbal abuse, restrictions on communication with non-Filipino coworkers, and prohibition from speaking her native Tagalog language. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment, and had a disparate impact on Filipino workers like Ms. Luis. Since the opening of the first location of LAmande French Bakery in Torrance, CA in April 2012 through the present, respondents prevented Ms. Luis and her Filipino coworkers from speaking Tagalog in the workplace in violation of Cal. Govt. Code Section 12951. Respondents had no business necessity for the restriction on Tagalog, did not provide the requisite notice of the restriction, and did not prevent similarly situated non-Filipino employees from speaking their native, non-English languages in the workplace. After Ms. Luis received a DLSE questionnaire in March 2014 asking her to document wage and hour violations that would have revealed wage discrimination and other differential treatment, respondents retaliated against Ms. Luis in violation of Cal. Govt. Code Section 12940 et seq. by threatening to file bankruptcy and send an employee back to the Philippines unless she falsified her responses on the questionnaire to cover up evidence of wage discrimination. After Ms. Luis participated in a DLSE hearing in July 2014 concerning LAmandes denial of minimum wage, overtime and proper meal breaks, LAmande retaliated by issuing her a 9-page adverse employment write-up in August 2014. Before the DLSE hearing she never received a write-up of any kind. On January 20, 2015, respondents retaliated against Ms. Luis by terminating her employment. As a result, Ms. Luis seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 22, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

Recky Puzon

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

Sid Nadkarni
Latham And Watkins LLP, 355 South Grand Ave.
Los Angeles California 90071

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 448292-140466
Right to Sue: Puzon / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complaintant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 448292-140466
Right to Sue: Puzon / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

Recky Puzon
2335 Pacific Coast Highway, Apt. # 2
Lomita California 90717

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 448292-140466
Right to Sue: Puzon / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Recky Puzon,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 22, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

Enclosures

cc: Ana Moitinho De Almeida

Goncalo Moitinho De Almeida

French Concepts BH, D/b/a L`Amande French Bakery

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Recky Puzon, Complainant.

DFEH No. 448292-140466

vs.

French Concepts, Inc., D/b/a L`Amande French Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 21, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a work environment free of discrimination and/or retaliation, Other, On information and belief, respondents denied Mr. Puzon minimum wage, overtime pay, tips, proper meal breaks, and other wage and hour protections in violation of FEHA. Respondents also prevented Mr. Puzon from speaking his native Tagalog language in the workplace, with no business justification, in violation of FEHA.** Complainant believes respondent committed these actions because of their: **National Origin - including language use restrictions** .

3. Complainant **Recky Puzon** resides in the City of **Lomita**, State of **California**. If complaint includes co-respondents please see below.

**Co-Respondents:**

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

French Concepts BH, D/b/a L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90274

DFEH 902-1

-6-

*Complaint – DFEH No. 448292-140466*

Date Filed: January 22, 2015

Exhibit A - 115

**Exhibit A - Page 122**

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Mr. Puzon by subjecting him to disparate treatment on the basis of his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying him minimum wage, proper meal breaks, tips, overtime pay and other wage and hour protections to which he was entitled from the beginning of his employment in August 2013 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way.From the beginning of his employment for respondents in August 2013 and continuously through the present, Mr. Puzon suffered ongoing harassment by his employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included, for example, continuous verbal abuse, restrictions on communication with non-Filipino coworkers, and prohibition from speaking his native Tagalog language. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment, and had a disparate impact on Filipino workers like Mr. Puzon. Since the beginning of Mr. Puzons employment for respondents in August 2013 continuously through the present, respondents prevented Mr. Puzon and his Filipino coworkers from speaking Tagalog in the workplace in violation of Cal. Govt. Code Section 12951. Respondents had no business necessity for the restriction on Tagalog, did not provide the requisite notice of the restriction, and did not prevent similarly situated non-Filipino employees from speaking their native, non-English languages in the workplace. After Mr. Puzon received a DLSE questionnaire in March 2014 asking him to document wage and hour violations that would have revealed wage discrimination and differential treatment, respondents retaliated against Mr. Puzon in violation of Cal. Govt. Code Section 12940 et seq. by threatening to cancel his visa, making him lose his job and forcing him to return to the Philippines, unless he falsified his responses on the questionnaire to cover up evidence of wage discrimination. After Mr. Puzon participated in a DLSE hearing in July 2014 concerning respondents denial of minimum wage, overtime and proper meal breaks, respondents retaliated by issuing him an adverse employment write-up. Before the DLSE hearing he never received a write-up of any kind. As a result, Mr. Puzon seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 22, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

# Rolando Suratos



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

January 22, 2015

Sid Nadkarni
Latham And Watkins LLP, 355 South Grand Ave.
Los Angeles California 90071

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 448292-140469
Right to Sue: Suratos / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complaintant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 448292-140469
Right to Sue: Suratos / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency — GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** — ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

January 22, 2015

Rolando Suratos
8570 W. Olympic Blvd.
Los Angeles California 90035

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 448292-140469
Right to Sue: Suratos / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Rolando Suratos,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 22, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Enclosures

cc: Ana Moitinho De Almeida

Goncalo Moitinho De Almeida

French Concepts BH, D/b/a L`Amande French Bakery

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Rolando Suratos, Complainant.

DFEH No. 448292-140469

vs.

French Concepts, Inc., D/b/a L`Amande French Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 21, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a work environment free of discrimination and/or retaliation, Other, On information and belief, respondents denied Mr. Suratos equal pay and working conditions as non-Filipino workers in violation of FEHA..** Complainant believes respondent committed these actions because of their: **Other National Origin.**

3. Complainant **Rolando Suratos** resides in the City of **Los Angeles**, State of **California**. If complaint includes co-respondents please see below.

**Co-Respondents:**

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

French Concepts BH, D/b/a L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90274

DFEH 902-1

-6-

*Complaint – DFEH No. 448292-140469*

Date Filed: January 22, 2015

Exhibit A - 124

**Exhibit A - Page 131**

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Mr. Suratos by subjecting him to disparate treatment on the basis of his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying him equal play and proper meal breaks to which he was entitled from the beginning of his employment in March 2014 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way. From the beginning of his employment for respondents in March 2014 and continuously through the present, Mr. Suratos suffered ongoing harassment by his employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included verbal abuse and harassment. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment, and had a disparate impact on Filipino workers like Mr. Suratos. After Mr. Suratos refused to provide information about co-workers who may have reported wage discrimination and/or participated in proceedings that would have revealed wage discrimination in May 2014, respondents retaliated against Mr. Suratos in violation of Cal. Govt. Code Section 12940 et seq. by making veiled threats to send him back to the Phillipines. Respondents also retaliated against Mr. Suratos by issuing him an adverse employment write-up after he attempted to claim overtime pay to which he was entitled. Before the DLSE hearing he never received a write-up of any kind. As a result, Mr. Suratos seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 22, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

Romar Cunanan

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

January 21, 2015

Sid Nadkarni
Latham And Watkins LLP, 355 South Grand Ave.
Los Angeles California 90071

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 448454-140543-R
Right to Sue: Cunanan / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complaintant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

January 21, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 448454-140543-R
Right to Sue: Cunanan / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

January 21, 2015

Romar Cunanan
2335 Pacific Coast Highway, Apt. # 2
Lomita California 90717

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 448454-140543-R
Right to Sue: Cunanan / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Romar Cunanan,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 21, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.
DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

**AMENDED**

Enclosures

cc: Goncalo Moitinho De Almeida

French Concepts BH, D/b/A L`Amande French Bakery

Ana Moitinho De Almeida

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Romar Cunanan, Complainant.

DFEH No. 448454-140543-R

vs.

French Concepts, Inc., D/b/a L`Amande French Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 21, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a work environment free of discrimination and/or retaliation, Other, On information and belief, respondents denied Mr. Cunanan minimum wage, overtime pay, tips, proper meal breaks, and other wage and hour protections in violation of FEHA. Respondents also prevented Mr. Cunanan from speaking his native Tagalog language in the workplace, with no business justification, in violation of FEHA.** Complainant believes respondent committed these actions because of their: **National Origin - including language use restrictions** .

3. Complainant **Romar Cunanan** resides in the City of **Lomita**, State of **California**. If complaint includes co-respondents please see below.

Date Filed: January 21, 2015

Date Amended: January 22, 2015

**Co-Respondents:**

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

French Concepts BH, D/b/A L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90274

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Date Filed: January 21, 2015

Date Amended: January 22, 2015

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Mr. Cunanan by subjecting him to disparate treatment on the basis of his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying him minimum wage, proper meal breaks, tips, overtime pay and other wage and hour protections to which he was entitled from the beginning of his employment in September 2012 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way. From the beginning of his employment for respondents in September 2012 through the present, Mr. Cunanan suffered ongoing harassment by his employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included, for example, continuous verbal abuse, restrictions on communication with non-Filipino coworkers, and prohibition from speaking his native Tagalog language. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment and had a disparate impact on Filipino workers like Mr. Cunanan.Since the beginning of Mr. Cunanans employment for respondents in September 2012, and continuously through the present, respondents prevented Mr. Cunanan and his Filipino coworkers from speaking Tagalog in the workplace in violation of Cal. Govt. Code Section 12951. Respondents had no business necessity for the restriction on Tagalog, did not provide the requisite notice of the restriction, and did not prevent similarly situated non-Filipino employees from speaking their native, non-English languages in the workplace. After Mr. Cunanan received a DLSE questionnaire in March 2014 about wage and hour violations that would have revealed wage discrimination and other differential treatment, respondents retaliated against Mr. Cunanan in violation of Cal. Govt. Code Section 12940 et seq. by threatening to fire him, deport him back to the Philippines, and harm his family unless he falsified his responses on the questionnaire to cover up evidence of wage discrimination.After Mr. Cunanan participated in a DLSE hearing in July 2014 concerning respondents denial of minimum wage, overtime, and proper meal breaks, respondents retaliated by issuing him an adverse employment write-up. Before the DLSE hearing he never received a write-up of any kind.As a result, Mr. Cunanan seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

Date Filed: January 21, 2015

Date Amended: January 22, 2015

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 21, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

Ronaldo Santia

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency
GOVERNOR EDMUND G. BROWN JR.
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
ACTING DIRECTOR ANNMARIE BILLOTTI
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

Sid Nadkarni
Latham And Watkins LLP, 355 South Grand Ave.
Los Angeles California 90071

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 448292-140467
Right to Sue: Santia / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complaintant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 448292-140467
Right to Sue: Santia / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

January 22, 2015

Ronaldo Santia
2335 Pacific Coast Highway, Apt # 2
Lomita California 90717

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 448292-140467
Right to Sue: Santia / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Ronaldo Santia,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 22, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Enclosures

cc: Ana Moitinho De Almeida

Goncalo Moitinho De Almeida

French Concepts BH, D/b/a L`Amande French Bakery

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Ronaldo Santia, Complainant.

DFEH No. 448292-140467

vs.

French Concepts, Inc., D/b/a L`Amande French Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 21, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a work environment free of discrimination and/or retaliation, Other, On information and belief, respondents denied Mr. Santia minimum wage, overtime pay, tips, proper meal breaks, and other wage and hour protections in violation of FEHA. Respondents also prevented Mr. Santia from speaking his native Tagalog language in the workplace, with no business justification, in violation of FEHA..** Complainant believes respondent committed these actions because of their: **National Origin - including language use restrictions** .

3. Complainant **Ronaldo Santia** resides in the City of **Lomita**, State of **California**. If complaint includes co-respondents please see below.

Date Filed: January 22, 2015

**Co-Respondents:**

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

French Concepts BH, D/b/a L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90272

DFEH 902-1

-6-

*Complaint – DFEH No. 448292-140467*

Date Filed: January 22, 2015

Exhibit A - 142

**Exhibit A - Page 149**

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Mr. Santia by subjecting him to disparate treatment on the basis of his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying him minimum wage, compensation for missed meal and rest breaks, tips, overtime pay and other wage and hour protections to which he was entitled from the beginning of his employment in August 2013 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way. From the beginning of his employment for respondents in August 2013 and continuously through the present, Mr. Santia suffered ongoing harassment by his employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included, for example, continuous verbal abuse, restrictions on communication with non-Filipino coworkers, and prohibition from speaking his native Tagalog language. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment, and had a disparate impact on Filipino workers like Mr. Santia. Since the beginning of Mr. Santias employment for respondents in August 2013 continuously through the present, respondents prevented Mr. Santia and his Filipino coworkers from speaking Tagalog in the workplace in violation of Cal. Govt. Code Section 12951. Respondents had no business necessity for the restriction on Tagalog, did not provide the requisite notice of the restriction, and did not prevent similarly situated non-Filipino employees from speaking their native, non-English languages in the workplace. After Mr. Santia received a DLSE questionnaire in March 2014 asking him to document wage and hour violations that would have revealed wage discrimination and differential treatment, respondents retaliated against Mr. Santia in violation of Cal. Govt. Code Section 12940 et seq. by threatening to cancel his visa, making him lose his job and force him to return to the Philippines unless he falsified his responses on the questionnaire to cover up evidence of wage discrimination.After Mr. Santia participated in a DLSE hearing in July 2014 concerning respondents denial of minimum wage, overtime and proper meal breaks, respondents retaliated by issuing him an adverse employment write-up. Before the DLSE hearing he never received a write-up of any kind. As a result, Mr. Santia seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 22, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

Wilfredo Lariga

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

DEPARTMENT OF FAIR EMPLOYMENT & HOUSING ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

Sid Nadkarni
Latham And Watkins LLP, 355 South Grand Ave.
Los Angeles California 90071

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 448292-140465
Right to Sue: Lariga / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Complaintant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 448292-140465
Right to Sue: Lariga / French Concepts, Inc., D/b/a L`Amande French Bakery

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING** ACTING DIRECTOR ANNMARIE BILLOTTI

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 22, 2015

Wilfredo Lariga
8570 W. Olympic Blvd
Los Angeles California 90035

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 448292-140465
Right to Sue: Lariga / French Concepts, Inc., D/b/a L`Amande French Bakery

Dear Wilfredo Lariga,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 22, 2015 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

**BEFORE THE STATE OF CALIFORNIA**

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of
Wilfredo Lariga, Complainant.

DFEH No. 448292-140465

vs.

French Concepts, Inc., D/b/a L`Amande French Bakery Respondent.
2553 Pacific Coast Highway
Torrance, California 90505

Complainant alleges:

1. Respondent **French Concepts, Inc., D/b/a L`Amande French Bakery** is a **Private Employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Complainant believes respondent is subject to the FEHA.

2. On or around **January 21, 2015**, complainant alleges that respondent took the following adverse actions against complainant: **Discrimination, Harassment, Retaliation Denied a work environment free of discrimination and/or retaliation, Other, On information and belief, respondents denied Mr. Lariga minimum wage, overtime pay, tips, proper meal breaks, and other wage and hour protections in violation of FEHA. Respondents also prevented Mr. Lariga from speaking his native Tagalog language in the workplace, with no business justification, in violation of FEHA.** Complainant believes respondent committed these actions because of their: **National Origin - including language use restrictions** .

3. Complainant **Wilfredo Lariga** resides in the City of **Los Angeles**, State of **California**. If complaint includes co-respondents please see below.

Date Filed: January 22, 2015



**Co-Respondents:**

Ana Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

Goncalo Moitinho De Almeida
2553 Pacific Coast Highway
Torrance California 90505

French Concepts BH, D/b/a L`Amande French Bakery

25 Aurora Dr.
Rolling Hills Estates California 90274

DFEH 902-1

-6-

*Complaint – DFEH No. 448292-140465*

Date Filed: January 22, 2015

Exhibit A - 151

**Exhibit A - Page 157**

**Additional Complaint Details:**

On information and belief, respondents French Concepts, Inc., French Concepts BH, Ana S. Moitinho de Almeida, and Goncalo Moitinho de Almeida discriminated against Mr. Lariga by subjecting him to disparate treatment on the basis of his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. by denying him minimum wage, compensation for missed meal and rest breaks, tips, overtime pay and other wage and hour protections to which he was entitled from the beginning of his employment in May 2013 continuously through at least June 2014. Respondents did not treat similarly situated non-Filipino employees in the same way.From the beginning of his employment for respondents in May 2013 and continuously through the present, Mr. Lariga suffered ongoing harassment by his employers Ana S. Moitinho de Almeida and Goncalo Moitinho de Almeida based on his Filipino national origin in violation of Cal. Govt. Code Section 12940 et seq. Respondents conduct included, for example, continuous verbal abuse and prohibition from speaking his native Tagalog language. Non-Filipino workers did not suffer the same conduct. The conduct rose to the level of a hostile work environment, and had a disparate impact on Filipino workers like Mr. Lariga. Since the beginning of Mr. Larigas employment for respondents in May 2013 and continuously through the present, respondents prevented Mr. Lariga and his Filipino coworkers from speaking Tagalog in the workplace in violation of Cal. Govt. Code Section 12951. Respondents had no business necessity for the restriction on Tagalog, did not provide the requisite notice of the restriction, and did not prevent similarly situated non-Filipino employees from speaking their native, non-English languages in the workplace. After Mr. Lariga received a DLSE questionnaire in March 2014 asking him to document wage and hour violations that would have revealed wage discrimination and other differential treatment, respondents retaliated against Mr. Lariga in violation of Cal. Govt. Code Section 12940 et seq. by telling him that he would not have a job unless he falsified his responses on the questionnaire to cover up evidence of wage discrimination. After Mr. Lariga participated in a DLSE hearing in July 2014 concerning respondents denial of minimum wage, overtime and proper meal breaks, respondents retaliated by issuing him an adverse employment write-up after he attempted to claim overtime pay to which he was entitled. Before the DLSE hearing he never received a write-up of any kind. As a result, Mr. Lariga seeks all available remedies, including but not limited to backpay, compensatory and punitive damages, injunctive relief, and attorneys fees and costs from respondents.

VERIFICATION

I, **Sid Nadkarni**, am the Attorney for Complainant in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On January 22, 2015, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**
**Sid Nadkarni**

# Exhibit "B"

Sherry S. Bragg, Esq. (Bar No. 132815)
sbragg@weintraub.com
Jacob C. Gonzales (Bar No. 235555)
jgonzales@weintraub.com
Corbett H. Williams (Bar No. 246458)
cwilliams@weintraub.com
Anthony B. Daye (Bar No. 252217
adaye@weintraub.com
**WEINTRAUB TOBIN**
23 Corporate Plaza Drive, #200
Newport Beach, California 92660-7901
Tel: (949) 760-0204; Fax: (949) 760-2507

**Attorneys for Defendants** FRENCH CONCEPTS, INC., d/b/a L'AMANDE FRENCH BAKERY, FRENCH CONCEPTS BH, d/b/a L'AMANDE FRENCH BAKERY, BARATOW LLC, ANALIZA MOITINHO DE ALMEIDA, and GONCALO MOITINHO DE ALMEIDA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

CENTRAL DISTRICT JUDICIAL DISTRICT

ERMITA ALABADO, an individual, FERNANDO BELIDHON, an individual, ROMAR CUNANAN, an individual, ARMELINDA DELA CERNA, an individual, ELMER GENITO, an individual, WILFREDO LARIGA JR., an individual, LOUISE LUIS, an individual, GINA PABLO-GROSSMAN, an individual, RECKY PUZON, an individual, RONALDO SANTIA, an individual, and ROLANDO SURATOS, an individual,

Plaintiffs,

v.

FRENCH CONCEPTS, INC., a California corporation, d/b/a L'AMANDE FRENCH BAKERY, FRENCH CONCEPTS BH, a California corporation, d/b/a L'AMANDE FRENCH BAKERY, BARATOW LLC, ANALIZA MOITINHO DE ALMEIDA, an individual, and GONCALO MOITINHO DE ALMEIDA, an individual,

Defendants.

**CASE NO.: BC 576048**

[Assigned for all Purposes to:

**ANSWER TO COMPLAINT**

COMPLAINT filed: 3/18/2015

weintraub tobin chediak coleman grodin
law corporation

Defendants FRENCH CONCEPTS, INC., d/b/a L'AMANDE FRENCH BAKERY, FRENCH CONCEPTS BH, d/b/a L'AMANDE FRENCH BAKERY, BARATOW LLC, ANALIZA MOITINHO DE ALMEIDA, and GONCALO MOITINHO DE ALMEIDA (collectively, "Defendants"), hereby respond to, answer and defend themselves against the unverified COMPLAINT dated March 18, 2015 (the "COMPLAINT"), filed in the above-captioned action (the "Action"), as follows:

**GENERAL DENIAL**

Pursuant to section 431.30(d) of the Code of Civil Procedure, Defendants generally deny the allegations of the COMPLAINT, and each and every purported cause of action alleged against them therein, and further deny that Plaintiffs have been damaged by reason of any act, omission or conduct on the part of Defendants as alleged in the COMPLAINT, or at all.

**AFFIRMATIVE DEFENSES**

Without undertaking any burden of proof not otherwise assigned to them by law, and in-part for the purpose of preserving them, Defendants assert the following affirmative defenses to the COMPLAINT, the purported causes of action alleged against them, and the relief sought therein:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

For a first, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every such cause of action, fails to state a claim upon which relief can be granted or fails to state facts sufficient to constitute a claim for relief against Defendants.

**SECOND AFFIRMATIVE DEFENSE**

**(Pleading Uncertain)**

For a second, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every such cause of action, is uncertain in that, *inter alia,* it fails to state with reasonable

weintraub tobin chediak coleman grodin
law corporation

particularity the alleged wrongful acts or omissions on the part of Defendants, or the damages allegedly suffered by Plaintiffs.

**THIRD AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

For a third, separate affirmative defense to the COMPLAINT, and to each purported cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every such cause of action, is barred by the applicable statute of limitations.

**FOURTH AFFIRMATIVE DEFENSE**

**(Laches)**

For a fourth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every such cause of action, is barred by the doctrine of laches.

**FIFTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

For a fifth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every such cause of action, is barred by Plaintiffs' unclean hands.

**SIXTH AFFIRMATIVE DEFENSE**

**(Waiver and Estoppel)**

For a sixth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every such cause of action, is barred because Plaintiffs have waived and are estopped from asserting the claims alleged therein.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Excuse)**

For a seventh, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and

weintraub tobin chediak coleman grodin
law corporation

each and every such cause of action, is barred because Defendants' performance of their obligations alleged in the COMPLAINT was excused.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Justification and Good Cause)**

For an eighth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every such cause of action, is barred because any and all conduct by Defendants was fully justified and supported by good cause.

**NINTH AFFIRMATIVE DEFENSE**

**(Good Faith)**

For a ninth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that they acted in good faith and with the reasonable belief that their actions were lawful at all times and places mentioned in the COMPLAINT.

**TENTH AFFIRMATIVE DEFENSE**

**(Assumption of Risk)**

For a tenth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fail as any damages or losses sustained by Plaintiffs were caused by risks that they were well aware of, understood and voluntarily assumed.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Ratification)**

For an eleventh, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fail as Plaintiffs' claims are barred, in whole or in part, because they ratified Defendants' alleged conduct.

/////

/////

weintraub tobin chediak coleman grodin law corporation

Page 4 P:\HOME\CLIENTS\FRENCH CONCEPTS\ANSWER.docx

ANSWER TO COMPLAINT

Exhibit B - Page 164

**TWELFTH AFFIRMATIVE DEFENSE**

**(Consent)**

For a twelfth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fail as Plaintiffs, by their own acts, omissions and other conduct, are barred from any recovery herein against Defendants by the doctrine of consent.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Unjust Enrichment)**

For a thirteenth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fail as Plaintiffs are barred from recovery under the doctrine of unjust enrichment.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Res Judicata/Collateral Estoppel)**

For a fourteenth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fail as Plaintiffs are barred, in whole or in part, from any recovery herein under the doctrines of res judicata and collateral estoppel.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Full Performance)**

For a fifteenth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that Plaintiffs have no right to assert or maintain any claim against Defendants because Defendants have fully performed all obligations to be performed under any agreement allegedly entered between or among the parties, except as prevented or excused by the conduct of Plaintiffs.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Written Contracts)**

For a sixteenth, separate affirmative defense to the COMPLAINT and each and every

cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT and purported causes of action against Defendants are subject to, and limited by, the terms, exclusions, conditions, and limitations contained in the written contracts entered into between the parties.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(No Breach of Duty)**

For a seventeenth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fails because Defendants' conduct did not constitute a breach of any duty to Plaintiffs.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Compliance with Applicable Statutes)**

For a eighteenth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fails as Defendants have complied with all statutes applicable to the claims raised in the COMPLAINT.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Lack of Proximate Cause)**

For an nineteenth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that, to the extent that Plaintiffs have incurred, suffered or sustained any damages, which Defendants deny, such damages were not actually or proximately caused by any act of or omission by Defendants.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(No Irreparable Injury or Harm)**

For a twentieth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fails because Plaintiffs have not suffered any irreparable injury or harm and will not suffer any irreparable injury or harm as a result of any action or inaction by

Defendants.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(Lack of Justifiable Reliance)**

For a twenty-first, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that Plaintiffs did not justifiably rely on any of the alleged representations, conduct, or omissions of Defendants.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(Acts or Omissions of Plaintiffs)**

For a twenty-second, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every such cause of action, is barred because Plaintiffs caused any damages they may have suffered by their own acts or omissions, for which they are liable, and no act or omission of Defendants caused, in whole or in part, any such damages.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(Mitigation of Damages)**

For a twenty-third, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fail as Plaintiffs have failed, refused and neglected to mitigate their alleged damages, if any, and are thereby barred in whole or in part from recovery for such damages which would have been prevented by such reasonable efforts on their part.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(After-Acquired Evidence)**

For a twenty-fourth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants are informed and believe, and thereon allege, that the COMPLAINT, and each and every cause of action, is barred by the doctrine of after-acquired evidence, or the doctrine of after-acquired evidence limits and reduces Plaintiffs' alleged damages.

/////

Page 7 P:\HOME\CLIENTS\FRENCH CONCEPTS\ANSWER.docx

ANSWER TO COMPLAINT

weintraub tobin chediak coleman grodin law corporation

Exhibit B - Page 167

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(Just and Proper Exercise of Management Discretion)**

For a twenty-fifth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each purported cause of action alleged therein, is barred in that Defendants' actions were a just and proper exercise of management discretion, which were undertaken for a fair and honest reason, regulated by good faith under the circumstances then existing.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(Failure to Use Ordinary Care and Diligence in Performance of Duties)**

For a twenty-sixth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that any recovery on the COMPLAINT, or on any purported cause of action alleged therein, is barred by California Labor Code sections 2854 and 2856 in that Plaintiffs failed to use ordinary care and diligence in the performance of their duties and failed to comply substantially with the reasonable directions of their employer.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Failure to Exhaust Administrative Remedies)**

For a twenty-seventh, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each purported cause of action alleged therein, is barred in whole or in part because Plaintiffs failed to exhaust administrative remedies under the California Fair Employment and Housing Act, Government Code sections 12900 et seq. and other applicable statutes.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Actions Job Related and Consistent with Business Necessity)**

For a twenty-eighth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each purported cause of action alleged therein, is barred in whole or in part

weintraub tobin chediak coleman grodin
law corporation

because Defendants' actions taken with respect to Plaintiffs were job related for the position in question and consistent with business necessity.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

**(Failure to Exercise Reasonable Care)**

For a twenty-ninth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that any recovery on the COMPLAINT, and each purported cause of action alleged therein, must be barred or reduced to the extent that Plaintiffs did not exercise reasonable care and failed to take advantage of, and exhaust, the preventative or corrective opportunities provided by Defendants. Defendants have exercised reasonable care to prevent and correct promptly any acts of discrimination and/or retaliation. Defendants maintain and enforce policies prohibiting discrimination, harassment, and retaliation of and against its employees.

**THIRTIETH AFFIRMATIVE DEFENSE**

**(Legitimate, Non-Discriminatory Reasons)**

For a thirtieth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege they had legitimate, non-discriminatory reasons for their alleged conduct.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

**(Effective Policies and Practices)**

For a thirty-first, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege they had effective policies and practices in place to prevent the discrimination Plaintiffs allege.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

**(At-Will Employment)**

For a thirty-second, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that Plaintiffs are barred from obtaining the relief sought in the COMPLAINT or any relief whatsoever from Defendants, pursuant to California Labor Code section 2922.

weintraub tobin chediak coleman grodin
law corporation

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

**(Good Faith Dispute)**

For a thirty-third, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that any non-payment of wages (and/or required penalties for non-provision of required breaks or meal periods) if it occurred (such proposition being expressly denied by Defendants, but stated solely for purposes of this affirmative defense), did not occur due to Defendants' willful failure to pay wages (or penalties), but rather occurred as the result of a good faith dispute over the entitlement to wages

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

**(No Willfulness)**

For a thirty-fourth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that Plaintiffs' purported claims are barred, in whole or in part, and/or recovery is precluded, because Defendants' conduct was not knowing or willful.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

**(No Willfulness – Waiting Time Penalties)**

For a thirty-fifth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that Plaintiffs claim for waiting-time penalties under California Labor Code Section 203 is barred, in whole or in part, because Defendants' conduct was not knowing or willful.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

**(Offset)**

For a thirty-sixth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, If any amount is found owing from these answering Defendants to Plaintiffs, Plaintiffs are required to offset against any such amount, the amounts determined to be owing from Plaintiffs to Defendants.

/////

/////

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Speculation)**

For a thirty-seventh, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each and every cause of action, fail because the claims allege and damages sought are speculative.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Punitive Damages - Effective Policies and Practices)**

For a thirty-eighth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that the COMPLAINT, and each purported cause of action alleged therein, fails to state a cause or causes of action (including for punitive damages) against Defendants because any alleged harassing, discriminatory, or retaliatory conduct by any of Defendants' employees (which Defendants deny occurred as plead, but merely states for purposes of this affirmative defense), was contrary to Defendants' anti-harassment, anti-discrimination, and/or anti-retaliation policies, which Defendants implemented in good faith and fairly and adequately enforced.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

**(Punitive Damages)**

For a thirty-ninth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that Plaintiffs are barred from obtaining the relief sought in the COMPLAINT, or any other relief whatsoever, because Plaintiffs have failed to state a claim for punitive and/or exemplary damages. Without admitting that Defendants acted unlawfully toward Plaintiffs, Defendants are informed and believe that if Defendants acted unlawfully toward Plaintiffs (which Defendants expressly deny occurred as plead, but merely state for the purpose of this affirmative defense), that such acts were not intentionally directed toward Plaintiffs and were not carried out with a conscious disregard for Plaintiffs' rights. Defendants' conduct as alleged in the COMPLAINT does not constitute oppression, fraud or malice. Thus, Plaintiffs are not entitled to punitive damages, and the

imposition of such excessive damages is barred by the Constitutions of the United States and the State of California.

**FORTIETH AFFIRMATIVE DEFENSE**

**(Other Available Defenses)**

For a fortieth, separate affirmative defense to the COMPLAINT and each and every cause of action alleged therein as against Defendants, Defendants allege that Defendants presently have insufficient knowledge or information on which to form a belief as to whether it may have available additional, as yet unstated, affirmative defenses to the Plaintiffs' COMPLAINT. Defendants reserve the right to seek to amend its answer to assert such defenses when and if such new facts or information become available. Defendants reserve the right to assert additional affirmative defenses in the event that discovery indicates that doing so would be appropriate.

Dated: April 15, 2015

Respectfully submitted,

**weintraub tobin**

By: Sherry S. Bragg
Attorneys for Defendants

**PROOF OF SERVICE**

(CCP §§ 1013a(1), (3) and 1013(c) CRC Rule 2006(d)

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am over the age of eighteen years, and not a party to this action; and I am employed in the County of Orange, California, in which county the within mailing occurred. My business address is 23 Corporate Plaza Drive, #200, Newport Beach, CA 92660.

On ***April 15, 2015,*** I caused a true copy of the following documents to be served in this action upon the persons set forth below, by the method indicated.

Document(s) Served: **ANSWER TO COMPLAINT**

Person(s) or Party Served: **See Attached Service List**

[XX] **(BY MAIL)** I caused such envelope with postage thereon fully prepaid to be placed in the United States Mail at Newport Beach, California. I am "readily familiar" with the firm's practice of collecting and processing mail. It is deposited with the U.S. Postal service on that same day in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **(BY EXPRESS SERVICE CARRIER)** I deposited in a box or other facility regularly maintained by OVERNITE EXPRESS/FEDERAL EXPRESS an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents a copy of the above-referenced document, together with an unsigned copy of this declaration, in an envelope designated by the said express service carrier, with delivery fees paid or provided for, addressed to the above-referenced parties.

[ ] **(BY FACSIMILE TRANSMISSION)** I caused such document to be transmitted to the addressee(s) facsimile number noted above. The facsimile machine I used complied with Rule 2003(3) and the transmission was reported as complete and without error. Pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the facsimile transmission, a copy of which is attached to this declaration.

[ ] **(BY ELECTRONIC SERVICE)** (email) pursuant to agreement of counsel through the services of One Legal Inc.

[ ] **(BY PERSONAL DELIVERY)** I caused such envelope to be delivered by hand to the addressee(s) listed herein.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on ***April 15, 2015*** at Newport Beach, California.

Lindsay S Golter

Lindsay Sayers Golter

weintraub tobin chediak coleman grodin
law corporation

## Service List

| | |
|---|---|
| **LATHAM & WATKINS LLP**<br>MICHAEL ROMEY (Bar No. 137993)<br>*michael.romey@lw.com*<br>YI-CHIN HO (Bar No. 204834)<br>*yichin.ho@lw.com*<br>PHILIP WANG (Bar No. 262239)<br>*philip.wang@lw.com*<br>GRANT COHEN (Bar No. 294467)<br>*grant.cohen@lw.com*<br>SID NADKARNI (Bar No. 301125)<br>*sid.nadkarni@lw.com*<br>ALEXANDRA WELCH (Bar No. 302394)<br>*alexandra.welch@lw.com*<br>355 South Grand Avenue<br>Los Angeles, California 90071-1560<br>Telephone: (213) 485-1234<br>Fax: (213) 891-8763 | **ATTORNEYS FOR PLAINTIFFS** |
| **ASIAN AMERICANS ADVANCING JUSTICE-LOS ANGELES**<br>LABONI HOQ (Bar No. 224140)<br>*lhoq@advancingjustice-la.org*<br>NICOLE GON OCHI (Bar No. 268678)<br>*nochi@advancingjustice-la.org*<br>YANIN SENACHAI (Bar No. 288336)<br>*ysenachai@advancingjustice-la.org*<br>JOHN C. TRANG (Bar No. 277080)<br>*j trang@advancingjustice-la.org*<br>1145 Wilshire Blvd., 2nd Floor<br>I Los Angeles, California 90017<br>Telephone: (213) 977-7500<br>Fax: (213) 977-7595 | **ATTORNEYS FOR PLAINTIFFS** |

**PROOF OF SERVICE**

(CCP §§ 1013a(1), (3) and 1013(c) CRC Rule 2006(d)

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am over the age of eighteen years, and not a party to this action; and I am employed in the County of Orange, California, in which county the within mailing occurred. My business address is 23 Corporate Plaza Drive, #200, Newport Beach, CA 92660.

On ***April 16, 2015,*** I served a copy of the following documents:

Document(s) Served: **DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Person(s) or Party Served: **See Attached Service List**

[XX] **(BY EXPRESS SERVICE CARRIER)** I deposited in a box or other facility regularly maintained by OVERNITE EXPRESS/FEDERAL EXPRESS an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents a copy of the above-referenced document, together with an unsigned copy of this declaration, in an envelope designated by the said express service carrier, with delivery fees paid or provided for, addressed to the above-referenced parties.

[**XX**] **(BY ELECTRONICALLY)** filing the foregoing document with the Clerk of the United States District Court, Central District, using its ECF System, which electronically notifies the persons on the attached service list at the email addresses registered with the ECF System.

I declare under the law of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on ***April 16, 2015*** at Newport Beach, California.

**/s/ Liz H. Graham**
Liz H. Graham

weintraub tobin chediak coleman grodin law corporation

**Service List**

| | |
|---|---|
| **LATHAM & WATKINS LLP**<br>MICHAEL ROMEY<br>YI-CHIN HO<br>PHILIP WANG<br>GRANT COHEN<br>SID NADKARNI<br>ALEXANDRA WELCH<br>Email: *michael.romey@lw.com*<br>*alexandra.welch@lw.com*<br>*yichin.ho@lw.com*<br>*philip.wang@lw.com*<br>*grant.cohen@lw.com*<br>*sid.nadkarni@lw.com*<br>355 South Grand Avenue<br>Los Angeles, California 90071-1560<br>Telephone: (213) 485-1234<br>Fax: (213) 891-8763 | **ATTORNEYS FOR PLAINTIFFS** |
| **ASIAN AMERICANS ADVANCING JUSTICE-LOS ANGELES**<br>LABONI HOQ<br>NICOLE GON OCHI<br>YANIN SENACHAI<br>JOHN C. TRANG<br>Email: *lhoq@advancingjustice-la.org*<br>*nochi@advancingjustice-la.org*<br>*ysenachai@advancingjustice-la.org*<br>*jtrang@advancingjustice-la.org*<br>1145 Wilshire Blvd., 2nd Floor<br>Los Angeles, California 90017<br>Telephone: (213) 977-7500<br>Fax: (213) 977-7595 | **ATTORNEYS FOR PLAINTIFFS** |

weintraub tobin chediak coleman grodin
law corporation